UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO 04-

HEIDI K. ERICKSON
    Plaintiff

    v.

COMMONWEALTH OF MASSACHUSETTS
MITT ROMNEY, GOVERNOR et al
    Defendants

EMERGENCY REQUEST FOR TEMPORARY
RESTRAINING ORDERS

04 - 1 1 6 0 7 DPW

1. Now comes, Plaintiff, pro se in the above entitled matter while relying upon her filed herewith Verified Complaint paragraphs 6-12, Memorandum of Law in Support of Preliminary Injunction and Affidavit INCORPORATED herein respectfully requests an Emergency Temporary Restraining Order upon the Defendant's Massachusetts Department of Agricultural Resources, Bureau of Animal Health (MDA) Restraining it from destroying Ms. Erickson's beloved Persians currently held by the Animal Rescue League (ARL, a shelter organization known to euthanize more animals than any other shelter organization in New England) located at 599 Washington Street Pembroke, MA. The ARL refuses to treat the Persians for the causative agent of the Quarantine (Exh.1,2) and refuses to release said Persians so Ms. Erickson could treat them BY HER VETERINARIAN claiming that they are allegedly under orders not to release the said Persian because of said fraudulently procured and maintained sham Quarantine (Exh.1,2) While the Trustees for the Animal Recuse League animatedly have informed Plaintiff that it will make sure her Persians are not returned to her.

2. The MDA has threatened to euthanize Ms. Erickson's Persians on or after July 19th, 2004 an act that requires immediate, emergency intervention from this Honorable Court to prevent the unnecessary destruction of several gentle, beautiful loving purebred Persians.

3. The ARL gained unlawful custody of Ms. Erickson's Persians following 2 years of harassing her, and from a fraudulently procured search warrant found on 5/22/04 to have be incorrectly issued, and while on 5/22/04 the Waltham District Court Ordered the Return of Property (Ms.Erickson's Persians) (EXH. 1). The ARL has had unlawful custody for the Commonwealth of these seized Persians since 5/7/03. The Animal Rescue League (ARL) exposed the said Persians to diseases they did not have upon their seizure including *tinea titus* aka "ringworm" veterinarian speak for the term *tinea titus* which is commonly known as "athletes foot" by the rest of the world) and daily putrid contaminated ambient air of such poor quality their little eyes burn red and swollen (EXH 2) photos of some of the cats on the day their were seized and 11.5 months later note the red swollen eyes and open soars (caused by *tinea titis* left untreated) on their skin not noticeable on the day their were seized as they were properly treated and now are suffering terribly). The ARL fails to properly treat the *tinea titus* and secured a fraudulent quarantine to hold them and uses this sham quarantine as a pretext to deprive Ms. Erickson of her property a goal that it has had for years of harassment. ARL has even interfered with the prosecution and her defense denying her vet. examination of her Persians without months of additional harassment and interferences with a defense preparation. Ms. Erickson hired Dr. Lund DVM Board Certified in Feline Medicine to examined each Persian, who did so on 3/16/04 and states that the Persians condition does not warrant euthanasia and that this *tinea titus* is not being properly treated.

4. Ms. Erickson is extremely emotionally and physically attached to her Persians, each intrinsically valuable emotionally and genetically as they are purebred, pedigreed, shown and titled and are either Grand Champion, Regional Winners or first generation from Cat Fanciers Association (CFA) National Winners. Many hand raised and/or bred by Ms. Erickson and many born into her home.

1

IN SUPPORT

5.  On or about May 22nd, 2004 Judge Flynn of the Waltham District Court in Waltham MA, allowed Ms. Erickson's Motion for the Return of Property (EXH 1) being held by the ARL upon the Commonwealth's declaration that they would not use the animals as evidence at trial on a criminal matter that previously Judge Flynn allowed Ms. Erickson's Motion to Suppress Evidence. Judge Flynn's endorsed orders did not effect any quarantine that these animals maybe held under.

6.  Immediately after Judge Flynn Ordered the said Return of Property Ms. Erickson requested the ARL for her Persians immediate return – (EXH 3)letters to board members) the ARL refused to release her Persians to her care while they refused they claimed that because of the MDA's quarantine they "Could not release Persians and that the quarantine prevents them from releasing Ms. Erickson's Persians." Ms. Erickson states that the ARL has transmitted the disease *tinea titus (commonly known as athletes foot and known as ringworm by Veterinarians)* to her Persians and fails to adequately treat her Persians in a ruse to unlawfully deprive her of her beloved Persians.

7.  On or about June 2nd, 2004 and after many failed attempts with the ARL's attorneys Ms. Erickson contacted many of the Trustees of the ARL and they too have informed Ms. Erickson "no *we* will not return any of your Persians to you no matter what!"

8.  On or about June 3rd 2004 and in writing on June 21st and July 7th, 2004 (EXH 4)(EXH 5) and in person on June 30th, 2004 Ms. Erickson contacted, spoke and meet with the MDA requesting the immediate return of her Persians supporting her request with photographs, her education, and 40 years of experience and that her facility is adequate and invited the MDA to inspect it for appropriateness. Last week she invited the MDA to inspect her home it refused and today she called requesting the immediate return and informed the Commissioner that she would seek a TRO in Federal Court.

9.  The MDA's responses over the last few week has been outrageious, extremely non cooperative and extremely restrictive, irrelevant and unnecessary that the quarantine will not be lifted until the Persians are non-infectious or transferred to a facility that is impossible for Ms. Erickson to acquire and more restrictive then their current housing by the ARL. Dr. Lund has indicated the *tinea titus* is endemic in Persians especially those who live in a colony. The MDA's restrictions frivolous in direct detriment to the health and well-being of Ms. Erickson beloved Persians and a pretext to deprive, under color of law, Ms. Erickson's property that are currently being harmed and mistreated!. In addition the MDA demands that it and another other regulatory agency have open access to her home, medical records and that it be provided with Ms. Erickson's financial records! (EXH 6) and (EXH 7). + (Exh. 8)

10. Ms. Erickson has been trying to work out the return and release of her beloved Persians for nearly 2 months to no avail the Commonwealth of Massachusetts through a frivolous, fraudulent, unnecessary, unreasonable measures including maintaining a quarantine upon these gentle creatures keeps depriving Ms. Erickson of her beloved Persians while it fails to provide adequate and necessary care for them.

11. On or about July 2nd, 2004 the MDA issued a letter or recommendations for the transferal of its issued quarantine on Ms. Erickson's Persians requiring that Ms. Erickson's not keep her pets at home but must be kept at a pet shopp (EXH 6) all other requirements are written to be extreme measures and impossible for a pet owner. Then after Ms. Erickson instructed the MDA as to her vet who would supervise her home and her Persian, invited the MDA to inspect her home, it issued a last alternative (EXH 7) is so restrictive and unconstitutional depriving Ms. Erickson her beloved Persians and those under the 14th Amendment by a state actor.

12. Ms. Erickson contacted the United States Department of Agriculture and it informs Ms. Erickson that the MDA's quarantine ridiculous, you don't quarantine a colony of Persians for *tinea tinus* that are kept enclosed inside a private home.

13. Ms. Erickson contacted the Center for Disease Control in Atlanta Georgia, who in turn informs Ms. Erickson that it doesn't recommend house hold pets infected with ring worm to be quarantined in fact the CDC specifically hosts a web page detailing ring worm in house hold pets because this occurrence is so common. (Exh.  )

14. Dr. Lund, (Doctor of Veterinary Medicine, and Board Certified Feline Practitioner), who examined the Persians informs Ms. Erickson that these Persians being held under a quarantine for over a year should not still have the ringworm if it had been adequately and properly treated. Ringworm, *tinea titus* is endemic to Persians cats in a colony and that people can become immune to it. Ms. Erickson who is a third generation Persian breeder, who all her life have been surrounded by multiple Persians and who use to be a professional athlete and loves to garden is immune to *tinea titus* and there is no concern she has in acquiring *tinea titus*.

15. Ms. Erickson's 2 letters sent to the MDA (EXH 6) and EXH 7)Commissioner Gillespie and Lorraine O'Connor describing the need to return her Persians immediately to her, and/or move the quarantine but preferably rescind it, report the ARL for malpractice and animal abuse have been completely ignored. Following her first letter she sat down in a meeting with Commissioner Gillespie supporting her statements with statements from Dr. Lund, providing the MDA with address and telephone number and before and after photographs of her Persian taken on the day that they were seized, noting their appearance and condition and then after being in the care and custody of the ARL for over 11 months denoting their red swollen eyes caused by putrid contaminated ambient air demonstrating for obvious reasons the neglect and mistreatment of her Persians (EXH 2) also the photographs demonstrate no evidence of ringworm while under Ms. Erickson's care but now 11 ½ months later lesions demonstrating that after the ARL has had custody of her beloved Persians there is evidence of ringworm and that that particular cat was not receiving adequate medical care to relieve it of that causative agent. In addition she provided the MDA with the test results from Dr. Lund indicating that some of Ms. Erickson's Persian are not infected with ringworm.

16. Ms. Erickson requested to transport the Persians quarantine or not to her home, that she has provided rooms of her single standing structure (Cottage) that are able to be quarantined off from other animals, and people. Her home is not open to the general public and she has the requisite knowledge and training to care for her Persians if they are infected with ringworm. She has provided in her home and on call Veterinarian, separate cages and have non-absorbable stain resistant bottoms and floors that can easily be washed everyday, in these rooms there is a separate vented and filtered ambient air, in addition there is a place for their baths, and amble natural light and space food, fresh water and love and attention. Ms. Erickson informed the MDA that she would be willing to allow the MDA to inspect her home. Despite these reasonable allowances and the conditions of adequate treatment by both a veterinarian and a caretaker who loves her Persians the MDA made several unrealistic, unnecessary demands, and many impossible to be complied with made to deprive Ms. Erickson her property and companionship of her beloved Persians.

17. The MDA requirements include subjecting Ms. Erickson's home to the same requirements as those for pet shops, this is unnecessary and irrelevant as Ms. Erickson's home not open to the public like a pet shop. MDA has made impossible requirements knowing that these are unnecessary and are not consistent with other quarantines it has issued.

18. In addition the MDA requirements that Ms. Erickson's veterinarian sign a promissory legal document subjecting the Vet to a law suit by the Commonwealth for the maintenance of the integrity of the quarantine unnecessary and impossible to be complied with.

19. In addition the MDA requirements include that the local Public Health Department inspect Ms. Erickson's home despite the fact that *tinea titus* is not a public health concern for the implementation of inspection made by and or pursuant to an official from the Public Health Department, the MDA's requirement of this frivolous, unnecessary and unnecessarily alarming made to produce public scorn and alarm upon Ms. Erickson.

20. In addition the MDA requirements require Ms. Erickson to release her financial status and to continually release medical information to it.

21. Lastly and most importantly for this Emergency Temporary Restraining Orders the MDA has threatened to euthanize all of Ms. Erickson's beloved Persians on or after June 19th, 2004.

## HISTORICALLY SPEAKING

22. Plaintiff states the Animal Rescue League on May 7th, 2003 seized her Persians pursuant to a fraudulently procured search warrant that they did so beyond the scope of said warrant as a result of said seizure, the ARL failed to provide adequate veterinary care, failed to feed baby kittens, mishandled pregnant queens forcing them to abort their pregnancies and generally mistreated her Persians whereby several died due to neglect.

23. In addition due to the incompetency of the ARL it intentionally exposed the Persians to diseases they did not have upon seizure including ringworm (aka a veterinarian term for *tinea titus* commonly known as "athletes foot"). The ARL fails to properly treat the *tinea titus* and secured a fraudulent quarantine to hold them and sought to prevent Plaintiff's expert witnesses and veterinarians from examining the Persians.

## PRAYER FOR EMERGENCY RELIEF

1. Plaintiff prayers for a restraint of the MDA its employees and/or agents from euthanizing or from any action that would have a tendency to cause the destruction and/or harm on any of Ms. Erickson's beloved Persians currently in its custody under a quarantine and or under the custody and control of the Animal Rescue League at 599 Washington Street, Pembroke, MA and or MDA until a hearing could be conducted on Motion for Preliminary Injunction.

2. In addition Restrain the ARL from failing to provide adequate veterinarian care pursuant to recommendations of Dr. Lund, DVM, Feline Practitioner of City Kitty Providence Rhode Island. (See affidavit of Catherine Lund, DVM attached hereto.)

3. Order the preservation and necessary medical/veterinary care upon all of Ms. Erickson beloved Persians currently held at Animal Rescue League, 599 Washington Street, Pembroke, MA according to Catherine Lund, DVM, Feline Practitioner of Providence R.I.

By signature hereunder I attest that the facts herein are true under the pains and penalties of perjury and that today I have called the Massachusetts Department of Agricultural Resources requesting they not destroy my beloved Persians. I informed them that I was seeking this TRO.

Respectfully submitted by Heidi K. Erickson, *pro se*
July 19th, 2004

MIDDLESEX, ss.

WALTHAM DISTRICT COURT
DOCKET NUMBER 0351CR1312

COMMONWEALTH

V.

HEIDI ERICKSON

## MOTION FOR
## RETURN OF PROPERTY

Now comes the defendant, Heidi Erickson and moves for the return of the following seized property:

(a) all cats and kittens seized from her apartment at 78 Prentiss Street on May 7, 2003;
(b) all kittens born to her cats after the seizure.

As reasons therefore the defendant states that the cats and kittens have no evidentiary value for the Commonwealth at this time and that therefore, the Commonwealth has no basis for holding them. There is no statute that allows the Commonwealth to seize animals for non-evidentiary purposes based on mere allegations of animal cruelty.

_Counsel for the Defendant_
William N. Brownsberger
Suite 201
18 Moore Street
Belmont, MA 02478
(617) 489-2612
BBO# 061500

Re Hearing

Comm has asserted that the
ts & kittens and any any offspring are
slonger necessary to be kept by the
um as evidence and is willing to
struct Criminal Recess to argue that the A&L
s not need to keep the animals as the custodian
the Commonwealth evidence. The Court is not passing
adequacy that as this point they are holding the animals pursuant to
a, probable order issued by the Mass Dept of Agriculture pursuant

RECEIVED
MAY 1 3 2004
WALTHAM DISTRICT COURT

The Commonwealth of Massachusetts
DEPARTMENT OF FOOD & AGRICULTURE
BUREAU OF ANIMAL HEALTH AND DAIRYING

# ORDER OF QUARANTINE

(Chapter 129, General Laws, I. E.)

FOR ANIMALS UNDER SUSPICION OF HAVING A CONTAGIOUS DISEASE

ORIGINAL
(to be delivered
to owner or person
in charge)



Town or City of __Pembroke__

To __Animal Rescue League of Boston__ _____ owner/person having an interest in/or person in charge:

You are hereby notified, that by virtue of the powers and authority vested in me by law, I have quarantined

upon premises of __Pembroke Animal Care and Adoption Center__ on __899 Washington__ Street

__Isolation Ward : 46 cats + kittens and any born to this group__

(Number, Sex, Species, Breed, Age, Color, Name) _____

Date __6 / 2 / 2003__

under suspicion of having the disease known as __Ringworm__ _____ a contagious disease under the law;

You and all other persons whom it may concern are hereby forbidden to remove the same from said place of quarantine for any purpose

whatever, except by permission of the Chief of Animal Health or his authorized agent.

Name of person bitten _____

Address _____

Date of Bite _____

Face bite? __N/A__           Body bite? _____

__Charlene Brennan DVM__           Inspector of Animals



← 5/7/03

Watertown    P-24

← 5/7/03



← 3/16/04



Exh. 2a

← 5/7/03

Watertown

P-23

← 3/10/04



← 5/7/03

Watertown

P-27



← 3/16/04



← 5/7/03

Watertown    P-5

3/14/04
↓



*Received for Animal Health*
*Agricultural Resources*
*John Lunus*

Heidi Kristine Erickson
Harvard Postal Station
Box 0444
Cambridge, MA 02238-0444
www.cat-lady.org

**URGENT PLEASE READ IMMEDIATELY**

DELIVERY IN HAND    June 21st, 2004

Commissioner Douglas Gillespie
Lorraine O'Connor, DVM
Department of Food & Agriculture
Bureau of Animal Health and Dairying

RE:    Immediate **Safe** Return of My Beloved Persians allegedly under Quarantine
At Pembroke Animal Rescue League who are failing to provide necessary treatment
Seized from 78 Prentiss Street Watertown, MA on 5/7/03
And Fraudulently Quarantined in June 2003 and continuously keeps these
Gentle creatures quarantined for the lack of treatment.

Dear Commissioner Gillespie and Dr. O'Connor:

This letter is being hand delivered to both of you as it is of such great importance to bring to your
immediate attention of the inhumane treatment and deceitful cover-up by Animal Rescue League staff who
are using your influence to maintain unlawful custody of my beloved Persians unlawfully seized from my
home in Watertown on 5/7/03 and held without adequate medical attention since then. It appears from
medical records, and from a medically competent licensed feline practitioner Catherine Lund, DVM who
inspected the Persians at the Pembroke location testing each for various things including ringworm and
analyzing their current condition and medical treatment. Dr. Lund believes that the Animal Rescue League
have been failing to provide adequate treatment to rid the Persians of ringworm, that the alleged
"treatment" and husbandry attempts inadequate, impractical and lacking. I understand that since the
League's unlawful seizure it has transmitted a contagious disease to my extremely valuable and
intrinsically valuable purebred Persians. Under no circumstances should these beautiful, gentle and highly
valuable purebred Persians be destroyed and Dr. Lund's opinion is that euthanasia inappropriate. The
League is under investigation as to why they have refused to treat my Persians especially after they induced
this contagious disease upon them and I am asking your assistance with retrieving them so that I could have
them treated adequately.

It appears that you have quarantined my Persians to the Pembroke location of the League at 599
Washington Street to their demise and to their harm as the League is under-skilled, understaffed and
unwilling to provide the necessary treatment to relieve my Persians of the affliction that I can sufficiently
and adequately prove the League responsible in giving my Persians the ringworm that you considered in
your orders of quarantine. It being my intention to treat my beloved Persians at my home, in separated
room with adequate medical attention, therapy and proper ventilation.

It is my intent to separate those Persians into separate rooms of my house a single detached structure
according to Dr. Lund's advice. Dr. Lund will continue to supervise their treatment. It is my
understanding from Dr. Lund's tests that some of my Persians currently at Pembroke do not have
ringworm, but currently there is nothing in place at Pembroke to prevent the spreading of this disease. I
plan on moving my Persians together and then separating them according to Dr. Lund's recommendations.
It is my intent to do this in 48 hours with your permission. The short time is necessary to prevent further
unnecessary harm that the League is permitting to occur by its purposeful failures to provide the adequate

1

medical treatment to rid the Persians of ringworm to prevent their recovery while maintaining your harmful quarantine upon them. More importantly, it is believed that the League's failure to provide adequate medical treatment is in order to prevent my Persians from being returned to me while using your quarantine in a manipulative and negligent manner. I believe that to be unlawful. The League is accusing your quarantine as their excuse and/or scapegoat preventing them from the immediate release my Persians. It is my goal to retrieve my Persians immediately and treat them at home, where I will have the necessary and adequate medical therapy including the absolutely necessary love and attention they need and require.

Lastly, I have been in touch with the US Department of Agriculture who inspected the Pembroke location and my Persians at the League in May 2004 and have informed me that your quarantine unwarranted, unorthodox and suspicious. I ask that remove this quarantine immediately and investigation why if at all it is still necessary.

Thank you for your time, consideration and response.

Yours truly,

Heidi K. Erickson

Visit  www.cat-lady.org  or  call 617-319-4000

Received
by
Kent A. Lage

2

*Recieved By: Alexander Cau
Dept. Animal Health
DATE: 7/7/04.
Recieved By: Ryan Walsh
Governors external relations
7/8/04*

Heidi Kristine Erickson
Harvard Postal Station
Box 0444
Cambridge, MA 02238-0444
www.cat-lady.org

**URGENT PLEASE READ IMMEDIATELY**

DELIVERY IN HAND    July 7th, 2004

*Ex. 4a*

Commissioner Douglas Gillespie
Lorraine O'Connor, DVM
Department of Food & Agriculture
Bureau of Animal Health and Dairying

RE:    Immediate **Safe** Return of My Beloved Persians/Quarantine

And Fraudulently Quarantined in June 2003 and continuously keeps these
Gentle creatures quarantined for the lack of treatment.

Dear Commissioner Gillespie and Dr. O'Connor:

This letter is being in response to my June 21st, 2004 letter and your responsive
communication of July 2nd, 2004 (facsimile cover sheet with a letter from Dr. Lorraine
O'Connor which ends at page 3 Para 6 of 'In addition to these requirements, would suggest
the following requirements....

Paragraph 6 of the additional requirements ends with Consequently, it is my strong
recommendation that neither the custody of the animals, nor responsibility for maintaining
the integrity of the quarantine be transferred to anyone other than a veterinarian licensed
through the Commonwealth in good standing. I would further recommend that this
individual sign a statement agreeing to ensure the treatment of the animals and to maintain
the integrity of the quarantine.

The transmission ends there. Is there more? What is there is that you expect and/or
recommend that my home be regulated like a pet shop? And/or at least be subjected to the
same regulatory conditions that a pet shop is, unreasonable.

First because a pet shop is open to the public, my home is not. Secondly, my home has
previously been subjected to the conditions of your quarantine and was not required to be
regularly supervised by a licensed Veterinarian who was neither recommended nor required
to "sign a statement agreeing to ensure the integrity of the quarantine",

Thirdly, addressing the last remark again, "I would further recommend that this individual
sign a statement agreeing to ensure the treatment of the animals and to maintain the integrity
of the quarantine." I believe that a licensed Veterinarian in any state of this country has an
obligation beyond their moral conscience to "ensure the treatment of the animals" and that
their license depends upon their role of Veterinarian and their oath to treat. So that point
should be argued no further.

Further, it is fairly clear (from photos of the condition of my beloved Persians on the day they were seized while there is no doubt that I was their primary care giver supervised by two high quality Veterinarians, compared to the March photos taken after my Persians have been suffering at the hands of the Animal Rescue League who obviously has low quality Veterinarians and staff there is a striking difference) leaving one to come to a reasonable conclusion that with my care they have received adequate care, treatment, love and attention and that my home is adequate a facility for my Persians quarantine and far superior to the Animal Rescue League facility. Together with concluding that the care my Persians are receiving currently and have had to suffer through the last several months under the abusive treatment, inadequate medical care given them by the unsupervised Animal Rescue League at Pembroke must be addressed immediately!

The photos attached hereto are those that I had shown repeatedly to both Commissioner Gillespie and Brad Mitchell on Tuesday June 29th, 2004 (Color Copies attached to Dr. O'Connor's copy of this letter, BW to all others). These photographs pages have two photos on each page of the same cat, a before and after photo array. The first photo taken on 5/7/03 and the other on 3/16/04. The photos taken on 5/7/03 were taken at my home on the day my beloved Persians were maliciously seized, and the second taken on 3/16/04 at the Animal Rescue League at Pembroke of the abuse that my Persians are currently suffering inadequate care and medical treatment.

My home is sufficient to house my animals, Dr. O'Connor is sufficient make inspections of their quarantine and progress and especially so since she regularly travels right by my home. I am not a lay person, but a highly educated, veterinarian technician that is very suitable to care, adequately treat and successfully so all of my beloved Persians. In addition my home is much better suited then the current quarantine location and obviously better staffed.

I ask that you immediately implement this request to transfer my Persian to my home. If this implementation requires a visit to my home first for an inspection tomorrow afternoon is the available and under the circumstances of my Persians suffering absolutely necessary that we take immediate steps to insure that they are not suffering at the hands of the Animal Rescue League as demonstrative in the attached photos.

My beloved Persians will, and could have and will be treated adequately here at home. For their sake lets do this transfer immediately. I will remind you that each one of my beloved Persians pure bred, pedigreed and of extreme intrinsic value to me personally, they are also highly valuable genetically many of them valued over $5,000.00 - $10,000.00 but all irreplaceable. These are my unique beloved companions who have been suffering diseases that a facility under your auspices has transferred to them and fails or refuses to treat. Please lets work together for their good and get them home immediately and with no delays.

Respectfully,
Heidi K. Erickson
617-319-4000

cc    Kent Lage, Assistant Commissioner
      Brad Mitchell, Director of Regulatory and Consumer Services
      Mitt Romney, Governor
      Kerry Healey, Lieutenant Governor



Watertown

P-23

← 5/7/03

↑ shiloh



← 5/7/03

Watertown

P-5

← 3/16/



5/7/04

Watertown

P-5



3/10/0



3/16/04



5/7/03

Watertown

P-27



Red Raw +
INFLAMED !

NOTICE
CLEAR EYES
←
5/7/03



Watertown

P-40

AUTOPSY
REPORT
ATTACHED
10/7/0..

5 MONTHS
LATER  &
LATERAL
CORNEAL
ULCERS.



Watertown

P-46

...ersity School of Veterinary Medicine
...oro Road
..., MA  01536
...839-7900

Autopsy Report                    UUUu39

Mail To:

ANIMAL RESCUE LEAGUE                Phone:    617/426-9176
10 CHANDLER STREET                  FAX:      1-617-482-5113
BOSTON, MA  02116                   Route:    SE
                                    Type:     AUTO FAX

Customer No.: ANRESLG

---

Doctor:       SMITH, MARTHA          Species:   FELINE
Owner:        ANIMAL RESCUE          Breed:     PERSIAN
Patient:      P-40                   Sex:       F
Patient I.D.: N/A                    Age:       7 yrs. /  0 mos.

**Gross Findings:**

1. Emaciated cat.
2. Diaphragmatic hernia with adhesions. It contains portions of small intestine, quadrate and right medial liver lobes and gall bladder.
3. Paraovarian cyst.
4. Eyes - bilateral/corneal opacity with indentation.
5. Generalized lymphadenopathy

**Microscopic Findings:**

1) Eye (cornea) - There is focal loss of the corneal epithelium and multifocal proliferation of blood vessels and keratocyes/fibroblasts in the substancia propria.  In addition, there is mild infiltration of few lymphocytes and rare neutrophils.  Furthermore, there is a small focus with necrotic neutrophils, i.e., nuclear dust; 2) Liver (quadrate and right medial lobes) - There are multiple hemorrhagic foci and dilated sinusoids.  There are foci of periportal fibrosis.  The surface of the lobe is lined by cuboidal mesothelial cells; 3) Mesenteric lymph node - There is congestion of the subcapsulary and medullary sinusoids; 4) Lymph Nodes - There is follicular hyperplasia; 5) Paraovarian Cyst - It is lined by squamous epithelium and it contains small amount of bluish material; 6) Adrenals, bone marrow, brain, heart, kidneys, gall and urinary bladder, gastrointestinal tract, lung, pancreas, salivary gland, spleen, pituitary, thyroids, ovaries, uterus NSL.

**Diagnosis:**

1) Emaciated cat; 2) Diaphragmatic hernia of the large part of the small intestine, quadrate and right medial liver lobes; 3) Eyes - bilateral corneal ulceration; 4) Quadrate and right medial liver lobe - multiple hemorrhagic foci; 5) Paraovarian Cyst.

**Comment:**

The cause of the cat condition is speculative and it is a combination of past history and large diaphragmatic hernia which does not have abnormal histology of the small intestine but likely interferes with bowel movement and function.

*Ex. 5*

*Received by Kent Lage*

Heidi Kristine Erickson
Harvard Postal Station
Box 0444
Cambridge, MA 02238-0444

**URGENT PLEASE READ IMMEDIATELY**

DELIVERY IN HAND    July 9th, 2004

Commissioner Douglas Gillespie
Lorraine O'Connor, DVM
Department of Food & Agriculture
Bureau of Animal Health and Dairying

RE:    Immediate **Safe** Return of My Beloved Persians/Quarantine
Fraudulently Quarantined in June 2003 and continuously being abused by
the Animal Rescue League – please refer to objective photographic evidence of
the abuse!

Dear Commissioner Gillespie and Dr. O'Connor:

1.  As a preamble to this letter, that is being hand delivered to you, in response to your letter dated
    yesterday July 8th, 2004 and on the contrary your offices are public in the legal sense and my
    unannounced visits as a member of our community, my resident status in Massachusetts and as a
    legal obligation you hold, and especially since I am a tax payer, your offices shall remain as open
    to me as to others. Unless, as I suspect you are discriminating against me, as a member of a
    protected class, knowingly acting to embarrass me, deprive me of my rights and/or maliciously
    making me look incriminating to the general public who happen by. You are aware that I am an
    individual with a disability and your restrictions a purposeful violation of my rights as a citizen
    of the United States, and of this Commonwealth.

2.  You should immediately cease and desist from posting my picture, and letter restricting my
    access or I will commence all legal actions necessary to ensure my rights, and that I am not
    continually and maliciously held out to public scorn by your unlawful restrictive methods.

3.  In regards to my beloved Persians, and having stated the above, it has become more obvious that
    your intentions are not altogether lawful, nor in line with the manner and obligations you have
    toward me by your role as an appointed Commissioner to uphold the laws in the Commonwealth
    and more importantly animal welfare but that there is a severe derivation of this obligation and
    commitment. This point is so driven into the heart of this matter especially when you have seen
    the color photographs that I had brought to our meeting on or about June 30th, 2004, attached to
    my hand delivered communication dated July 7th, 2004, and have done nothing!.

4.  My beloved Persians have been suffering at the hands of the Animal Rescue League as evidenced
    in the attached photos referred to hereinabove at paragraph 3. The Objective Evidence
    demonstrating red swollen eyes, which is indicative of long standing contaminated ambient air
    and the lack proper husbandry and the lack of even the slightest amount of medical care to treat it
    one including proper and necessary fresh air, filtered air and eye cleansing. Currently my
    beloved Persian companions are living in conditions that are putrid while experiencing extreme
    deprivation of human contact. This deprivation only will reduce their immune system by its
    impact on their quality of life. ARL is subjecting my beloved Persians to such extreme abuse by

failing to adequately provide for them. And yes this is animal abuse you are obligated to report and investigate it. By your condoning it you are just as guilty as they. Again, this is another example of your rather unlawful, less then appropriate tactics to maintain my beloved animals from me to their suffering. And points to support my claims that you quarantine originally placed to prevent my access, my vet's access and is herein continued to maintain the charade and promulgate animal abuse and suffering.

5.  Your have mentioned several times that my Persians have other medical conditions that must be treated simultaneously together with treating the ringworm but you fail to mention what these are. If you are referring to the one girl that has had a vaginal discharge reported in medical records 2 weeks after her seizure and is still suffering from this same vaginal discharge your noting another example of animal abuse the failure of the ARL to properly, adequately treat her for this minor ailment. This condition doesn't require a hysterectomy, it requires a minor bout of antibiotics.

6.  The said photographs also demonstrate another issue that my care, of my 53 purebred breeding colony of Persians adequate given my training, education and experience compared to that which they are now exposed.

7.  As I explained many of your requirements unreasonable, unnecessary that my home for my companion animals is not open to the public, it is however a single stand-alone-structure and according to your rather unreasonable requirements better suited for the care and maintenance of my Persians who are by their innate characteristic seek human companionship and will receive this, be quarantined from others of their colony who are no longer effected with ringworm while all will receive adequate medical attention that they are currently being deprived of. With this bond of human touch, love and attention, and/or human presence, that they are currently being deprived of, suffering extreme mental distress should not be prolonged by your unnecessary and unreasonable demands. My home, my experiences, my vet, my animals care foremost unlike the Animal Rescue League who concern is first for their employees, who visit my Persians once daily to feed and possibly scope poops and whose facility doesn't even meet your standards that you are requiring of me.

Lets schedule a meeting to iron out our differences Monday July 12, 2004.

Respectfully submitted by

Heidi K. Erickson
617-319-4000

cc      Kent Lage
        Brad Mitchell
        Mitt Romney
        Kerry Healey
        MSPCA

Ex h.  6

THE COMMONWEALTH OF MASSACHUSETTS
EXECUTIVE OFFICE OF ENVIRONMENTAL AFFAIRS
**Department of Agricultural Resources**
251 Causeway Street, Suite 500, Boston, MA 02114
617-626-1700   fax 617-626-1850   www.Mass.gov/AGR



MITT ROMNEY
Governor

KERRY HEALEY
Lieutenant Governor

ELLEN ROY HERZFELDER
Secretary

DOUGLAS P. GILLESPIE
Commissioner

July 2, 2004

Via Facsimile 617-846-2288

Ms. Heidi Erickson

Re:    Quarantine of Persian cats located at ARL-Pembroke

Dear Ms. Erickson:

Enclosed please find a copy of a memorandum dated July 2, 2004 from Lorraine O'Connor DVM to Douglas Gillespie, Commissioner. In order to facilitate the relocation of the above-referenced quarantined animals, you will be required to meet the requirements as outlined in Dr. O'Connor's memorandum. You will have ten business days in which to demonstrate the capability to implement the requirements as laid out in this memo and bring this issue to closure. If we do not receive from you, in writing, an acceptable plan before the end of the 10th business day July 19, 2004, we will assume that you do not desire or are unable to proceed with a plan for the movement of the animals and the Department will determine what action to take relevant to the existing quarantine.

Please immediately confirm receipt of this facsimile transmission by return fax.

Very truly yours,

Kent Lage
Assistant Commissioner

To:        Doug Gillespie, Commissioner,
           Brad Mitchell, Director of Regulatory and Consumer Services
From:      Lorraine O'Connor, DVM
Date:      July 2, 2004
RE:        Quarantine of Persian cats located at ARL-Pembroke

Concerning the potential relocation of the above-referenced cats, at the minimum, I would require that the facility requirements for pet shops be applied to whatever facility these animals be potentially transferred to. The person charged with custody of the animals and the quarantine shall:

The following requirements would be necessary for a quarantine facility. Most of these are included in the current or pending Pet Shop regulations.

General Facilities.     The person(s) in charge of the quarantined animals and the person(s) responsible for the integrity of the quarantine order (hereinafter referred to as the "Responsible Parties") shall:

(a) Maintain all buildings and premises in good repair and in a sanitary condition;
(b) Maintain and use equipment in a manner which ensures the proper storage and disposal of wastes or disease-contaminated material, including, but not limited to, medical supplies, syringes, needles, and sharps containers;
(c) Maintain effective control measures to prevent the spread of disease, obnoxious odors, and the infestation of animals and premises with external parasites, insects, or vermin; and
(d) Maintain artificial illumination in all areas and rooms in which animals are kept. The artificial illumination shall be well distributed and adequate to provide efficient inspection and cleaning of facilities, enclosures, cages and animals. Each cage and enclosure in use shall be placed in a manner that protects the animals contained from excessive or stressful illumination.

(2) Quarantine Room. The Responsible Parties shall:

(a) Provide a room to be used exclusively for the purposes of quarantining sick or diseased animals as required.
(b) Ensure that the room is:
    1. Physically separated from rooms used to maintain other animals and human living areas;
    2. Completely enclosed by walls that extend from floor to ceiling;
    3. Equipped with an exhaust fan that serves to efficiently remove air from the room to an area outside the building and adequate ventilation to allow fresh air to circulate into the room;
    4. Equipped with a sink having hot and cold running water used exclusively for the cleaning and maintenance of the room, all equipment and utensils used therein, and animals housed within the room;

5. Not used to house or maintain other animals, for storage, as restroom, as a public access area, or any other such purpose;

6. Thoroughly cleaned and disinfected after animals have been removed and prior to the placement of other animals into the room; and

7. Maintained in such a manner that all equipment and utensils entering the room are thoroughly cleaned and disinfected before being taken out of the room.

(3) Protective Clothing for Quarantine Rooms. The Responsible Parties shall ensure that each person who enters the quarantine room or otherwise feeds, waters, cleans, treats or handles quarantined animals or disease-contaminated equipment or material shall wear clean protective outerwear, gloves and shoe covers while so doing, and shall remove protective outerwear, gloves, and shoe covers and thoroughly wash their hands with a disinfectant detergent immediately upon leaving such room.

(4) Animal Facilities. Each area where an animal is housed or maintained shall be:

(a) Cleaned and disinfected daily or more often if necessary to maintain a sanitary condition;

(b) Of adequate size and space to permit:

1. The animal(s) therein to stand, sit, lie down, turn around and make other normal postural adjustments without obstruction, interference or impediment by the presence of food and water bowls or cage mates; and

(c) Appropriate to provide the ambient temperature required for the animal considering its species, health, and age;

(d) Constructed and maintained in accordance with the following provisions:

1. Each wall shall be impervious to moisture from the floor to a height of four feet or to the height that the enclosed animal(s) can reach from its enclosure, which ever is higher;

2. Each floor shall be impervious to moisture and no carpeted flooring may be permitted in animal areas;

3. Any material used shall be resistant to rusting;

4. If the cage or enclosure has a wire floor, then the wire used shall be of adequate gauge to prevent sagging or injury to an animal's feet, and the mesh shall be small enough to prevent an animal's feet from falling through the bottom; and

(e) Designed to permit the unimpeded access of the animal(s) to clean, fresh food and water.

(5) In the event of zoonotic disease, the Responsible Party shall follow any additional recommendations relative to protective clothing, equipment and procedures necessary to protect human and animal health, as prescribed by the Department. The Department may prescribe such recommendations in consultation with the Massachusetts Department of Public Health or other agencies.

General Care of Animals

The responsible parties shall ensure that:

(1)     Sufficient fresh food of a type consistent with the dietary requirements and age of the species is offered to each animal daily, or at intervals commonly appropriate to the species and age of the animal;

(2)     Sufficient fresh and clean water is available to each animal at all times;

(3)     Bowls, dishes and other containers used for the feeding and watering of animals are cleaned daily or more often if necessary to maintain them free from contamination of excrement or urine;

(4)     A person is present for general care and maintenance of the animals at least once daily;

(5)     If animals are group housed, they are maintained in compatible groups without overcrowding;

> a.   No female cat in season is maintained in a cage, run, pen or other enclosure with a male cat, and no breeding of animals shall be allowed while they remain under quarantine.
>
> b.   All euthanasia is performed in accordance with accepted American Veterinary Medical Association standards.

In addition to these requirements, I would suggest the following requirements:

(1)     The premise should be a stand-alone facility with no public or common access to the quarantine area. It should not be a part of any other human dwelling.

(2)     A Quarantine notice shall be prominently posted at all entrances to the facility.

(3)     The Department must be provided with a signed statement from the owner of the building indicating they are aware of the nature of the quarantine, and are amenable to the animals being transferred to the building under the conditions of the quarantine. This document must be accompanied by proof that the signatory is the owner of the building.

(4)     A written statement from the local Board of Health that they will allow a quarantine to be moved into their city or town.

(5)     An approved Massachusetts licensed veterinarian's agreement to maintain custody of the animals and acceptance of full responsibility for the integrity of the quarantine and any associated conditions as set forth by the Department. Said veterinarian shall be responsible for overseeing the activities related to the daily care and maintenance of the quarantined animals.

(6)     These animals are quarantined for ringworm. Without other complications, this is a relatively simple disease to treat. However there are a number of other medical conditions that are wide-spread in this colony that must be managed in order to effectively treat the ringworm. I do not believe that the disease can be controlled by a lay person. Consequently, it is my strong recommendation that neither the custody of the animals, nor responsibility for maintaining the integrity of the quarantine be transferred to anyone other than a veterinarian licensed through the Commonwealth in good standing. I would further recommend that this individual sign a statement agreeing to ensure the treatment of the animals and to maintain the integrity of the quarantine.

(7)     A copy of said veterinarian's written plan for treatment and maintenance of these animals with periodic updates to the Department as to the care and response to treatment. The Department shall have complete access to and copies of all veterinary medical records of all animals as requested.

(8)     The Responsible Parties shall provide the Department with adequate proof that they have the financial resources to provide for the maintenance of the facility, the proper feed, care and housing of the animals and continued appropriate veterinary care.

(9)     The Department's inspectors and veterinarians as well as local public health officials shall have access to the facility and animals at reasonable times as requested.

(10)    There shall be a plan, approved by the Department, for the handling and disposal of any quarantined animal that may die during the quarantine period. No animal shall be removed from the facility without the express written permission of the Department.

(11)    All parties having involvement with the care and maintenance of the quarantined animals shall obey all applicable quarantine laws.

At such time that a facility is approved by the Department, a plan, to be approved by the Department, shall be instituted for the transportation of the quarantined animals and a reissue for a quarantine at the new quarantine facility.

Exh. 7



THE COMMONWEALTH OF MASSACHUSETTS
EXECUTIVE OFFICE OF ENVIRONMENTAL AFFAIRS

# Department of Agricultural Resources

251 Causeway Street, Suite 500, Boston, MA 02114

617-626-1700   fax 617-626-1850   www.Mass.gov/AGR



MITT ROMNEY
Governor

KERRY HEALEY
Lieutenant Governor

ELLEN ROY HERZFELDER
Secretary

DOUGLAS P. GILLESPIE
Commissioner

July 9, 2004

Ms. Heidi K. Erickson
Harvard Postal Station Box 0444
Cambridge, MA  02238-0444

Dear Ms. Erickson,

As I stated in the cover memo of my July 2, 2004 fax to you, if you are not able to demonstrate that you can meet the requirements for a quarantine facility outlined in that memo by July 19, 2004, we will conclude that you are not able to meet them and our offer to move the animals to another facility under quarantine will be formally withdrawn.

We are also in receipt of your letter faxed to our office on July 9, 2004.  In it you continue to accuse the Animal Rescue League of mistreating the cats, as well as raise several other points.  In response:

- Yes, our offices are public and you are welcome to arrive unannounced, as is any member of the public. However, if you do arrive unannounced and/or without an appointment, you can have NO expectation to conduct the business you deem to be appropriate for your visit.  The people who are attempting to resolve this situation have many other responsibilities and are not always in the office or available to see you when you arrive unannounced and/or without an appointment.  Your claim of discrimination is unfounded.
- As I stated in the letter of July 8, 2004, the Department of Agricultural Resources, Bureau of Animal Health is primarily charged with ensuring the health of animals in the Commonwealth.  The MSPCA is the organization with the primary legal authority relative to mistreatment of animals.  We would suggest you bring your allegations relative to ARL to the MSPCA.
- You continue to suggest that you are qualified to care for these animals.  We continue to disagree.  Given the health status of the colony, we remain adamant that any transfer of the animals and the quarantine is made to a licensed Massachusetts veterinarian.  We are equally adamant that the receiving veterinarian signs a statement obligating him or herself to the treatment and maintenance of the quarantine requirement.

In conclusion, your correspondence of July 9, 2004 has again failed to convince us that any of the requirements suggested by Dr. O'Connor are unreasonable, nor do you propose alternatives that are feasible to satisfy our concerns.  The recommendations outlined in Dr. O'Connor's memo remain the Department's requirements for the transfer of the cats and the quarantine from ARL to another facility.  As outlined above, your failure to meet these requirements by July 19, 2004 will result in the termination of the Department's offer to transfer the cats and quarantine to another facility.

We would be happy to meet with you to discuss this issue, however, Commissioner Gillespie is not scheduled to be in this office on Monday, July 12, 2004.  I can be reached at 617-626-1702 to schedule an appointment.

Sincerely,

Kent A. Lage



THE COMMONWEALTH OF MASSACHUSETTS
EXECUTIVE OFFICE OF ENVIRONMENTAL AFFAIRS

# Department of Agricultural Resources

251 Causeway Street, Suite 500, Boston, MA 02114
617-626-1700    fax 617-626-1850    www.Mass.gov/AGR



MITT ROMNEY
Governor

KERRY HEALEY
Lieutenant Governor

ELLEN ROY HERZFELDER
Secretary

DOUGLAS P. GILLESPIE
Commissioner

July 9, 2004

Ms. Heidi K. Erickson
Harvard Postal Station Box 0444
Cambridge, MA  02238-0444

Dear Ms. Erickson,

As I stated in the cover memo of my July 2, 2004 fax to you, if you are not able to demonstrate that you can meet the requirements for a quarantine facility outlined in that memo by July 19, 2004, we will conclude that you are not able to meet them and our offer to move the animals to another facility under quarantine will be formally withdrawn.

We are also in receipt of your letter faxed to our office on July 9, 2004. In it you continue to accuse the Animal Rescue League of mistreating the cats, as well as raise several other points. In response:

- Yes, our offices are public and you are welcome to arrive unannounced, as is any member of the public. However, if you do arrive unannounced and/or without an appointment, you can have NO expectation to conduct the business you deem to be appropriate for your visit. The people who are attempting to resolve this situation have many other responsibilities and are not always in the office or available to see you when you arrive unannounced and/or without an appointment. Your claim of discrimination is unfounded.
- As I stated in the letter of July 8, 2004, the Department of Agricultural Resources, Bureau of Animal Health is primarily charged with ensuring the health of animals in the Commonwealth. The MSPCA is the organization with the primary legal authority relative to mistreatment of animals. We would suggest you bring your allegations relative to ARL to the MSPCA.
- You continue to suggest that you are qualified to care for these animals. We continue to disagree. Given the health status of the colony, we remain adamant that any transfer of the animals and the quarantine is made to a licensed Massachusetts veterinarian. We are equally adamant that the receiving veterinarian signs a statement obligating him or herself to the treatment and maintenance of the quarantine requirement.

In conclusion, your correspondence of July 9, 2004 has again failed to convince us that any of the requirements suggested by Dr. O'Connor are unreasonable, nor do you propose alternatives that are feasible to satisfy our concerns. The recommendations outlined in Dr. O'Connor's memo remain the Department's requirements for the transfer of the cats and the quarantine from ARL to another facility. As outlined above, your failure to meet these requirements by July 19, 2004 will result in the termination of the Department's offer to transfer the cats and quarantine to another facility.

We would be happy to meet with you to discuss this issue, however, Commissioner Gillespie is not scheduled to be in this office on Monday, July 12, 2004. I can be reached at 617-626-1702 to schedule an appointment.

Sincerely,

Kent A. Lage