UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO 04- 11607

HEIDI K. ERICKSON
    Plaintiff

v.                      AFFIDAVIT HEIDI K. ERICKSON IN SUPPORT OF
                                   PRELIMINARY INJUNCTION

COMMONWEALTH OF MASSACHUSETTS
MITT ROMNEY, GOVERNOR et al
    Defendants

I Heidi K. Erickson do depose and say the following under oath attaching the missing pages 4-6 of her Affidavit filed earlier today and including the attached affidavit Brad Mitchell referred to therein.

**EXH. 6 Cat #P46** <u>autopsy report indicates</u> (death 6/21/03) subacute pneumonia, aspiration and dehydration. <u>Medical records indicate</u> that this cat was given multiple baths in lime dip (not recommended by current veterinary practice as it dangerous and has numerous side effects).

14. A hearing on short notice is required to prevent and to reduce the current harm that is impending upon this gentle creatures and upon my fear for their lives immediate, emergency intervention from this Honorable Court to prevent the unnecessary destruction of several gentle, beautiful loving purebred Persians that could occur in 10 days and which their suffering is currently occurring.

15. Dr. Lund has indicated the *tinea titus* is endemic in Persians especially those who live in a colony each may have it all their lives, some will only express the infection when under stress and many don't express the disease but are carriers - this is fairly well known in the trade of Persian husbandry. While my Persians are not in the best setting at the ARL, receiving virtually no human contact, they can expect to be stressed and depression. They are used to my contact and my talking and signing to them. This lack of human contact will also keep their immune systems depressed. My Persians could be receiving the adequate care at home where they belong and that the MDA's restrictiveness unnecessary given the quality of care that I could provide based on my over 40 years of Persian husbandry experience, my education including classes at Harvard University in Immunology, Comparative Biology, Population Biology, other course work in Microbiology, Zoology, Disease Transmission, Public Health, which includes environmental concerns relating to designe structures, disease transmission. I am qualified to care for my Persians in the condition they are in currently.

16. I have personally read, and discussed the medical records on each of my Persians with Dr. Lund and accordingly the medical records do not indicate that there is much other underlying medical conditions that Brad Mitchell's Affidavit alludes to but fail to support the allegation that "the animals have numerous other medical conditions that significantly complicate and prolong both the duration and severity of the infections as well as the treatment of this disease. As, such, more stringent safeguards are necessary to ensure the animals do not spread the disease, and receive appropriate veterinary care. No where is there any other reports that these animals have other diseases, other complications but maybe depression, red swollen eyes, red irritated buttocks all due to the lack of proper husbandry and TLC!

17. The MDA's restrictions frivolous in direct detriment to the health and well-being of Ms. Erickson beloved Persians and a pretext to deprive, under color of law, Ms. Erickson's property that are currently being harmed and mistreated!. In addition the MDA demands that it and another other regulatory agency have open access to her home, medical records and that it be provided with Ms. Erickson's financial records unfounded, extreme and again meant to deprive Ms. Erickson of property, privacy and under the color of law!

18. My home has meet standards that protect the general population from the spreading of the disease the MDA is concerned about, and I keep my home private, it is not open to the public.

4

19. My home has meet the standards for keeping the integrity of the quarantine and my promise to keep the doors locked, animal inside, animals inside treated, separated and properly cared for under the supervision and guidance of a veterinarian a reasonable

20. Ms. Erickson's home has met the standards for maintaining her colony in her home with or without a quarantine.

By signature hereunder I attest that the facts herein are true under the pains and penalties of perjury and that today I have called the Massachusetts Department of Agricultural Resources requesting they not destroy my beloved Persians. I informed them that I was seeking this TRO.

Respectfully submitted by

Heidi K. Erickson, *pro se*
July 22nd, 2004

<u>AFFIDAVIT OF BRAD MITCHELL</u>

My name is Brad Mitchell. I have worked for the Department of Agricultural Resources (formerly Department of Food and Agriculture) for over 10 years. I am currently the Director of the Division of Regulatory and Consumer Services as well as Acting-Director of the Division of Animal Health, Dairy Services and Biosecurity. As Acting Director of the latter Division, I am designated as the Director of Animal Health as referenced in Massachusetts General Laws c. 129, section 1.

Dr. Lorraine O'Connor is a Veterinarian who works within the Division of Animal Health, Dairy Services and Biosecurity. On about June 9, 2003, Dr. O'Connor placed a quarantine on a colony of Persian cats in the custody of the Animal Rescue League (ARL) at their facility in Pembroke. The animals were quarantined due to an epidemic of ringworm within the colony. Ringworm is a zoonotic disease, meaning that it can infect both people and animals. The quarantine is necessary to prevent further spread of disease to either animals or people. To date, the veterinarian at ARL has not been able to rid the colony of the disease. It is Dr. O'Connor's assessment that ARL has treated the colony appropriately for the disease, but that the treatment is complicated and of limited efficacy due to numerous other health issues that are prevalent within the colony.

Ms. Heidi Erickson, who we understand is the legal owner of the colony of cats, approached us on or about July 2, 2004 concerning the quarantine. She requested that we lift the quarantine. We explained that we could not do so as long as there was a significant risk of disease spread, and that such a risk still existed with the colony in question. Ms Erickson then requested that we release the cats, under quarantine, to her custody. While we generally do not allow quarantined animals to be moved, we agreed to allow the animals to be moved to another location under conditions set forth by the Department that were designed to ensure the integrity of the quarantine and minimize any risk of the spread of the disease. We gave Ms. Erickson 10 working days to demonstrate her ability to meet these conditions. The last day of the ten-day period was July 19, 2004. As of this date, she has failed to demonstrate her ability to meet the criteria set forth by the Department relative to the movement of the colony of cats to another location.

As of today, the Department has not yet determined our next course of action. We have not issued an order to euthanize these animals. The Department has the legal authority under Chapter 129, section 2, of the Massachusetts General Laws to order euthanasia under these circumstances. This option has been discussed, but not yet decided upon. As the Department is aware of Ms. Erickson's concern with these animals, it has been decided that no such order shall be put in place without providing Ms. Erickson with 10 business-days to offer alternatives, and explore her legal options.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON THIS THE 20th DAY OF JULY, 2004.

_____
Brad Mitchell