UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HEIDI ERICKSON,
Plaintiff

VS

COMMONWEALTH OF MASSACHUSETTS, MITT ROMNEY, Governor, Commonwealth of Massachusetts, DOUGLAS GILLESPIE, Commissioner, Department of Agricultural Resources (MDA), LORRAINE O'CONNOR, Inspector of Animals, Department of Agricultural Resources (MDA), KENT LAGE, Deputy Director, Department of Agricultural Resources (MDA), BRAD MITCHELL, Associate Director, Department of Agricultural Resources (MDA), THOMAS REILLY, Attorney General Commonwealth of Massachusetts, ANIMAL RESCUE LEAGUE (ARL), ARTHUR SLADE, President, ARL, PAUL J. BRENNAN, Chairman, ARL, JAMI A. LOH, Treasurer, ARL, MRS. KATHLEEN D. GARVEY, As Trustee Member of the ARL Board, MRS. JEFFREY E. MARSHALL As Trustee Member of the ARL Board, RICHARD A. HALL, As Trustee Former Chairman, DR. HOLLEY KELSEY, As Trustee Member of the ARL Board, MRS. ALEXANDRA BRIGHT, As Trustee Member of the ARL Board, MS. BRIGHT, Executrix of the Estate of Mrs. Alexandra Bright, SIERRA BRIGHT, As Trustee Member of the ARL Board, STUART B. STRONG, JR., As Trustee Member of the ARL Board, JOHN L. WORDEN, III, As Trustee Member of the ARL Board, JUNE E. SHANK, As Trustee Member of the ARL Board, FRANKLIN KING, JR., As Trustee Member of the ARL Board, MEGAN SANSONS, As Trustee Member of the ARL Board, DAVID O'DONAHOE, As Trustee Member of the ARL Board, HEWITT MORGAN, JR., As Trustee Member of the ARL Board, MARY HATCH, As Trustee Member of the ARL Board, ROBERT GOLLEDGE, aka Roberta Golledge, Rev., As Trustee Member of the ARL Board, MARTHA SMITH, Employee ARL,
Defendants

C.A. NO. 1:04-CV-11607-DPW

BBO#435620
BBO#554526

**OPPOSITION TO PLAINTIFF'S MOTION FOR INJUNCTIVE RELIEF AND REQUEST FOR HEARING** BY DEFENDANTS ANIMAL RESCUE LEAGUE (ARL), ARTHUR SLADE AS PRESIDENT OF THE ARL, PAUL J. BRENNAN AS CHAIRMAN OF ARL, JAMI A. LOH AS TREASURER OF THE ARL, MRS. KATHLEEN D. GARVEY AS TRUSTEE MEMBER OF THE ARL BOARD, MRS. JEFFREY E. MARSHALL AS TRUSTEE MEMBER OF THE ARL BOARD, RICHARD A HALL AS TRUSTEE FORMER CHAIRMAN, DR. HOLLEY KELSEY AS TRUSTEE MEMBER OF THE ARL BOARD, MRS. ALEXANDRA BRIGHT AS TRUSTEE MEMBER OF THE ARL BOARD, MS. BRIGHT AS EXECUTRIX OF THE ESTATE OF MRS. ALEXANDRA BRIGHT, SIERRA BRIGHT AS TRUSTEE MEMBER OF THE ARL BOARD, STUART B. STRONG, JR., AS TRUSTEE MEMBER OF THE ARL BOARD, JOHN L. WORDEN, III AS TRUSTEE MEMBER OF THE ARL BOARD, JUNE E. SHANK AS TRUSTEE MEMBER OF THE ARL BOARD, FRANKLIN KING, JR. AS TRUSTEE MEMBER OF THE ARL BOARD, MEGAN SANSONS AS TRUSTEE MEMBER OF THE ARL BOARD, DAVID O'DONAHOE AS TRUSTEE MEMBER OF THE ARL BOARD, HEWITT MORGAN JR., AS TRUSTEE MEMBER OF THE ARL BOARD, MARY HATCH AS TRUSTEE MEMBER OF THE ARL BOARD, AND ROBERT GOLLEDGE AKA ROBERTA GOLLEDGE, REV. AS TRUSTEE MEMBER OF THE ARL BOARD

Now come the defendants Animal Rescue League ("ARL"), Arthur Slade as President of the ARL, Paul J. Brennan as Chairman of the ARL, Jami A. Loh as Treasurer of the ARL, Mrs. Kathleen D. Garvey as Trustee Member of the ARL Board, Mrs. Jeffrey E. Marshall as Trustee Member of the ARL Board, Richard A. Hall as Trustee Former Chairman, Dr. Holley Kelsey as Trustee Member of the ARL Board, Mrs. Alexandra Bright as Trustee Member of the ARL Board, Ms. Bright as Executrix of the Estate of Mrs. Alexandra Bright, Sierra Bright as Trustee Member of the ARL Board, Stuart B. Strong, Jr. as Trustee Member of the ARL Board, John L. Worden, III as Trustee Member of the ARL Board, June E. Shank as Trustee Member of the ARL Board, Franklin King, Jr., as Trustee Member of the ARL Board, Megan Sansons as Trustee Member of the ARL Board, David O'Donahoe as Trustee Member of the ARL Board, Hewitt Morgan, Jr., as Trustee Member of the ARL Board, Mary Hatch as Trustee Member of the ARL Board, and Robert Golledge aka Roberta Golledge, Rev., as Trustee Member of the ARL Board (hereinafter collectively referred to as the "ARL defendants") and oppose plaintiff

Heidi Erickson's ("plaintiff") Emergency Motion for Preliminary Injunction ("plaintiff's motion") seeking (a) an order restraining Defendants Massachusetts Department of Agricultural Resources MDA from continuing to quarantine plaintiff's Persian cats; (b) an order rescinding the issued quarantine of plaintiff's Persian cats; (c) an Order compelling Defendants Massachusetts Department of Agricultural Resources MDA to return to plaintiff her Persian cats seized on May 7, 2003; (d) an Order restraining and prohibiting all defendants from slander, and disseminating private information from Erickson's file and/or Erickson's Persians to any third party; and (e) an order restraining the ARL from depriving Ms. Erickson access to and/or impeding the release of her Persian cats. Plaintiff's motion must be denied, and the cats and kittens seized from her home should not be returned to her because <u>all</u> of the cats and kittens exhibited signs of longstanding neglect, disease and trauma (see June 5, 2003 Affidavit of Dr. Martha M. Smith, Staff Veterinarian, Animal Rescue League of Boston attached hereto as Exhibit 1)[1] and continue to exhibit signs of disease (see July 20, 2004 affidavit of Brad Mitchell attached hereto as Exhibit 2).[2] Moreover, while plaintiff's emergency motion seeks certain relief as it relates to the ARL defendants, the memorandum submitted by plaintiff in support of her emergency motion fails to mention or seek any specific relief from the ARL defendants. Accordingly, the ARL defendants are in the position of opposing an emergency motion without any knowledge as to the specific allegations asserted against them. For this reason alone, plaintiff's emergency motion must be denied. Lastly, plaintiff's emergency motion must be denied as she has failed to demonstrate that without the requested relief, she may suffer a loss of

---

[1] A copy of Dr. Smith's affidavit is attached hereto. The original of Dr. Smith's affidavit was filed with the Court on June 9, 2003 in the matter of <u>Erickson v. Watertown Health Department et. al.</u>, C.A. No. 03-10999-NG, as Exhibit 1 to Docket Entry No. 15.

[2] A copy of Mr. Mitchell's affidavit is attached hereto. The original of Mr. Mitchell's affidavit was filed with the Court on July 23, 2004 and is noted as Docket Entry No. 12.

rights that cannot be vindicated should it prevail after a full hearing on the merits. Finally, given the long and torturous history of plaintiff's repeated vexatious filings with this Court, many without giving proper notice to opposing parties,[3] defendants request that plaintiff be barred from making any further filings with this Court without first obtaining leave of Court.

**UNDERLYING FACTS[4]**

On or about May 5, 2003, the Health Department received a call indicating that the plaintiff was residing at 78 Prentiss Street in Watertown and that she was harboring numerous cats at those premises. (Affidavits of Jean-Jacques Doucette, Animal Control Officer for the Watertown Board of Health and Sharon Mastenbrook, Sanitarian for the Watertown Board of Health, the originals of which were attached to the Application for Search Warrant, a complete copy of which are attached as Exhibit 3 to Docket Entry No. 15 in Erickson v. Watertown Health Department et. al., C.A. No. 03-10999-NG) (Document also attached hereto as Exhibit 3). On May 5, 2003, Ms. Mastenbrook and Mr. Doucette attempted to inspect the subject premises. Id. However, no one answered. Also on May 5, 2003, the Watertown Police Department received a complaint of an odor coming from 78 Prentiss Street in Watertown. (See, Watertown Police Department Incident Report, attached as Exhibit 4 to Docket Entry No. 15 in Erickson v. Watertown Health Department et. al., C.A. No. 03-10999-NG) (Document also attached hereto

---

[3] Plaintiff has not properly served any of the ARL defendants. Plaintiff faxed the following to the Animal Rescue League on or about July 20, 2004: a 12 page Verified Complaint, a 4 page Emergency Request for Temporary Restraining Orders, a 1 page Motion for Oral Hearing on Preliminary Injunction, a 3 page Memorandum of Support on Motion for Preliminary Injunction, a 2 page Emergency Motion for Preliminary Injunction, and a 2 page Request for Production of Documents directed to the Massachusetts Department of Agricultural Resources (MDA). While plaintiff's request for temporary restraining orders references various exhibits, none of these exhibits were provided to the ARL defendants. Fax is not a valid method of service under Fed. R. Civ. P. 4(e)(1)(2), and plaintiff has not served any of the ARL defendants in any other manner.

[4] The underlying facts can be derived from the documents filed with the Court on June 9, 2003 in the matter of Erickson v. Watertown Health Department et. al., C.A. No. 03-10999-NG, as Exhibit 3, 4, 5 and 6 to Docket Entry No. 15.

as Exhibit 3). Police Officers McDevitt and Grady-Duguay arrived at the scene and met plaintiff's neighbor who alleged that she had knocked on the plaintiff's back door and gotten no response and that a strong foul smell was coming from the apartment. Id. The officers observed that the back porch door was open and that a strong foul smell was coming from the apartment. Id. The officers knocked on the back door and announced themselves, but no one responded. This door was ajar. Id. Because the door was ajar and the stench was stronger, the officers entered the premises to look for any injured or possibly deceased occupants. Id. They observed numerous cats that appeared to be malnourished and in very poor health. Id. There was fecal matter throughout the house. Id. There were dishes of water in the hallway but most cats could not get to the water because they were behind closed doors. Id. The officers did not see any cat food out or even empty cat food boxes or cans. Id. The officers were not sure whether the cats' condition was caused by the unsanitary conditions or disease. Id. The officers informed their patrol supervisor, who arrived to take photographs, and also informed Steven Ward of the Watertown Board of Health. Id. Mr. Ward indicated that he would seek an Administrative Search Warrant the next day, May 6, 2003.

Mr. Ward made an Application for a Search Warrant which was issued on May 7, 2003. Finding probable cause that there "was evidence of a crime" and that the subject premises were "in violation of the State Sanitary Code and violation of G.L. c. 272, δ77 et seq.", the Court authorized a search of the subject premises for "any sick, diseased, malnourished animals, dead or alive." (See Exhibit 3 to Docket Entry No. 15 in Erickson v. Watertown Health Department et. al., C.A. No. 03-10999-NG) (Document also attached hereto as Exhibit 3). The Court further explicitly authorized the officers "to seize said sick, diseased, malnourished animals which have been deprived of necessary sustenance". Id. The officers were not authorized to conduct the

search at night, to enter without announcement or search any persons present at the subject premises. Id.

On May 7, 2003, the defendant Watertown Police Department executed the Search Warrant according to its terms. It was conducted during daytime hours, at approximately 11:50 a.m. The Watertown Police Officers announced themselves and were allowed to enter the premises by the plaintiff. The Watertown Police Officers searched the premises for the items listed in the Warrant. The Animal Rescue League defendants did not conduct the search and did not enter the subject premises until they were requested to do so by the officers conducting the search. (See, Affidavit of Officer Christopher J. Charbonneau, Massachusetts Special State Police Officer and employee of the Animal Rescue League attached as Exhibit 5 and Affidavit of Lt. Alan Brogal of the Animal Rescue League of Boston, attached as Exhibit 6 to Docket Entry No. 15 in Erickson v. Watertown Health Department et. al., C.A. No. 03-10999-NG) (Document also attached hereto as Exhibit 3). The ARL defendants and Health Department officials determined that the cats were in poor health and were to be removed pursuant to the terms of the Warrant. Id. Fifty-two ill and/or malnourished cats were taken to the Animal Rescue League's Pembroke facility for care and evaluation. Id. It is these cats that plaintiff now seeks to have returned to her.

Over the past year, the cats have been quarantined and in the custody of the ARL. These cats are still diseased. See Exhibit 2. Over the past year, the ARL has treated the cats appropriately for the disease. Id. On or about July 2, 2004, plaintiff approached the Department of Agricultural Resources (MDA) ("the Department") concerning the quarantine of her cats and requesting that the quarantine be lifted. Id. Plaintiff was informed by the Department that the cats were still diseased and releasing the cats would lead to a significant risk of the spread of that

disease. Id. Plaintiff requested that she be given custody of the cats under quarantine. The Department ultimately agreed to allow the cats to be moved under certain conditions that were designed to minimize any risk of spread of the disease and maintain the integrity of the quarantine. Id. Plaintiff was given ten (10) days to meet these conditions and failed to do so. Id.

Based on the foregoing, the cats should not be returned to plaintiff, the quarantine should not be lifted, and plaintiff's motion for preliminary injunction should be denied.

**ARGUMENT**

"By definition, a preliminary injunction must be granted or denied after an abbreviated presentation of the facts and law. On the basis of this record, the moving party must show that, without the requested relief, it may suffer a loss of rights that cannot be vindicated should it prevail after a full hearing on the merits." Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616 (1980). The court must "initially evaluate in combination the moving party's claim of injury and chance of success on the merits". Id. at 617. If the court is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party. Id. "What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue." Id.

A review of the pleadings and papers filed before this Court reveals that plaintiff has no basis to claim that she will suffer a loss of rights that cannot be vindicated should she prevail after a full hearing on the merits. The thrust of plaintiff's emergency motion is that the

Department is planning to euthanize plaintiff's Persian cats. However, as is clearly set forth in the July 20, 2004 affidavit of Brad Mitchell, there is no current intention to euthanize plaintiff's Persian cats. Moreover, the Department has already advised plaintiff that if it decides to move forward with euthanizing plaintiff's cats, it will first give plaintiff ten (10) business days notice prior to issuing such an order so plaintiff can offer alternatives and/or explore legal options. Accordingly, plaintiff has no basis to claim that she will suffer a loss of rights that cannot be vindicated should she prevail after a full hearing on the merits. Accordingly, her emergency motion must be denied.

Moreover, it is clear that plaintiff has no reasonable likelihood of success on the merits. Plaintiff claims in her emergency motion that the "United States Department of Agriculture, Centers for Disease Control and a Licensed Doctor of Medicine who is Board Certified in Feline Medicine" are of the opinion that there is no harm in releasing her Persian cats. However, plaintiff has failed to provide any such opinion to the ARL defendants. Indeed, the only opinions before this Court indicate that the Persians are still diseased and that the ARL has treated the plaintiff's cats appropriately. See Exhibit 2. Moreover, it is still clear that the ringworm that infects the plaintiff's cats can infect both animals and people. Accordingly, lifting the quarantine and releasing the Persians to plaintiff will not only create harm to the Persians, it would expose the plaintiff herself to harm and to any person with whom she or the cats come into contact. Thus, her motion for preliminary injunction must be denied.

**1. Plaintiff does not have a substantial likelihood of success on the merits because plaintiff has failed to demonstrate an ability to meet the conditions mandated by the Department in order to remove the quarantined cats to another location.**

As discussed above, in order to prevail on her motion for preliminary injunction, plaintiff must show that she will suffer irreparable harm if her motion is allowed and that she has a substantial likelihood of success on the merits. Packaging Industries, *supra*. Plaintiff will be unable to show this because she has little chance of success on the merits since the evidence indicates that the cats are still diseased and the cats have been treated appropriately while quarantined. The Department has indicated a willingness to allow the quarantined cats to be relocated, but plaintiff has failed to demonstrate an ability to meet the conditions mandated by the Department in order to move the quarantine to another locations. Accordingly, since plaintiff does not have a reasonable likelihood of success on the merits of her Complaint, her motion for preliminary injunction must be denied.

**2. Irreparable harm will result to the cats and plaintiff if they are returned to the plaintiff or if the quarantine is lifted.**

As stated above, plaintiff's cats have been in the possession or control of the defendant ARL since they were removed from the plaintiff's possession. The cats are still diseased with ringworm, which is very difficult to clear and can be passed to other animals and people. To return the cats to the person and environment where they were so clearly neglected and abused would be manifestly unjust and would make a mockery of the Cruelty to Animals statute. The statute was enacted to protect animals from those who abuse them. The cats at issue here have undeniably suffered terrible neglect while in the care of the plaintiff. Under no circumstances should these cats be returned to the plaintiff absent the restrictions as mandated by the Department as there is no guarantee that the cats would be properly cared for. Moreover, returning the cats to the plaintiff will subject the plaintiff to the very disease carried by the cats.

**3. Plaintiff's Request that the Defendants be "restrain(ed) and prohibit(ed)" from "slander, and disseminating private information from Erickson's file and/or on Erickson's Persians to any third party" is nonsensical and must be denied.**

In her emergency motion, plaintiff seeks an order "restraining and prohibiting the Defendants from slander, and disseminating private information from Erickson's file and/or on Erickson's Persians to any third party." This request is nonsensical. Plaintiff fails to identify any alleged slander or dissemination of "private information" on the part of the ARL defendants. Accordingly, the ARL defendants cannot respond to this request other than to suggest that this request be denied.

**4. Plaintiff should be enjoined from any future filings in this Court without leave of Court**

Over the last ten years, plaintiff has filed numerous frivolous lawsuits in this Court. In the matter of Erickson v. Somers, et. al., C.A. No. 04-10629-DPW, by Order dated May 4, 2004, this Court (Woodlock, J.) directed plaintiff to show good cause why her in forma pauperis should not be revoked and why she should not be enjoined from future filings in this Court without leave of Court. (See Order on Motion for Reconsideration at p.23, attached hereto as Exhibit 4.) The Court specifically noted that plaintiff had been advised of the Court's authority to enjoin litigants who abuse the processes of the Court. Id. at pp. 19-20. The Court noted how plaintiff had "vexatiously filed meritless action after meritless action in this Court, and in many of these cases, has asserted an alleged need for emergency relief, requiring this Court to divert resources to advance and decide her claims out of order. It appears that an order enjoining Erickson is necessary to avoid her abuse of this Court's process." Id. at p. 22. The Court went on to order plaintiff to demonstrate good cause, in writing, within 35 days why she should not be sanctioned

or enjoined from further filings in this Court without leave of Court. Id. at p. 23. Under this Court's Order, plaintiff was required to demonstrate this good cause no later than June 9, 2004. Upon information and belief, plaintiff has failed to do so.

The within motion is yet another example of plaintiff's abuse of Court resources. Plaintiff has sought injunctive relief where no imminent harm exists, thus wasting this Court's valuable time and resources. Plaintiff has again made false and baseless allegations. The ARL defendants submit that the only way to stop plaintiff's harassing and meritless litigation is to rescind her in forma pauperis status and require her to first seek leave of Court before she can make any future filings with this Court.

For the foregoing reasons, the ARL defendants ask that plaintiff's motion for preliminary injunction be denied and that this Court rescind plaintiff's in forma pauperis status and enjoin plaintiff from any future filings in this Court without leave of Court

BY THEIR ATTORNEYS,

John J. Ryan, Jr., BBO# 425620
Emily G. Coughlin, BBO# 554526
Ryan, Coughlin & Betke, LLP
175 Federal Street
Boston MA 02110
(617) 988-8050

**CERTIFICATE OF SERVICE**

I, Emily G. Coughlin, hereby state that I have served the foregoing upon all counsel of record by first class mail this 2nd day of August, 2004 by serving same on Heidi K. Erickson, Harvard Postal Station, Box 0444, Cambridge, MA 02238-4000 and Juliana deHaan Rice, Esq., Attorney General's Office, Room 2019, One Ashburton Place, Boston, MA 02108-1698.

Emily G. Coughlin