FILED
Clerk's Office
USDC, Mass.
Date 8/13/04
By /M.
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO 04-11607 DPW

HEIDI K. ERICKSON
    Plaintiff

v.       RESPONSE TO DEFENDANT'S OPPOSITION   *alternatively*
    AMENDMENT TO MEMORANDUM IN SUPPORT
    OF PRELIMINARY INJUNCTION and MOTION FOR HEARING

COMMONWEALTH OF MASSACHUSETTS, ET AL
    Defendants

The Plaintiff, Ms. Erickson, relying upon her previously filed Memorandum in Support of her Motion for Preliminary Injunction incorporates the following:

1. Affidavit Catherine Lund, DVM, Feline Practitioner since 1986 and member of the American Association of Feline Practitioners and immediate past President of the Rhode Island Veterinary Medical Association (Exh 1). In Dr. Lund's Affidavit she states *"I find no compelling reason to isolate these cats in a quarantine situation that which is proposed by the [Defendants'] Department of Agriculture"* executed on August 12th, 2004.

2. Dr. Lund emphasizes *"the benefits of housing [the Persians] in a home are considerable"* and *"Simply going into a facility where ringworm-positive cats are housed will not create an infection in a person, and neither will that person mechanically transfer infectious agents outside the house on his or her person"* *"Regulations that limit public contact with potentially infection cats are sensible for facilities where the public might be unwittingly exposed to harmful agents. However, in the context of a home environment, which is not a licensed business and is not regulated as such, applying those same regulations seems unusual and extreme."*

3. Lastly, Dr. Lund finding from her personal review of the Mass. Dept. of Agricultures letters and knowing the medical records on the cats *"I find no compelling reason to prevent the immediate return of Ms. Erickson's Persians"*.

1

ADDING INSULT TO INJURY

4. Further, Dr. Lund attests *"I have found no indication of animal abuse by Ms. Erickson regarding her cats to be documented by a review of the preliminary medical records supplied to me by the Animal Rescue League"*. (Exh 1, para 16)

5. To prevent the immediate return of Ms. Erickson's beloved Persians would be to add insult to injury. Ms. Erickson's beloved family of Persians showed no signs of animal abuse, taken from her while violating her 4th amendment rights by a group of animal rights activists (Animal Rescue League) whose contradictory assessment of the conditions of Ms. Erickson's Persians has totally defamed her good name and reputation and has euthanized her companions torn from her heart.

6. On May 25th, 2004 Judge Gregory C. Flynn, Waltham District Court issued <u>Findings and Order on Defendant's Motion to Suppress</u> (Exh. 2a) and Allowed <u>Defendant's Motion for Return of Property</u>. Plaintiff attaches a copy of '<u>Defendant's Supplemental Memorandum of Law In Support of Motion to Suppress Evidence Obtained from Warrant-less Search</u>' for a historical review of the evidence as it was testified to and filed pursuant to a request from Judge Flynn. (Exh. 2b) The facts repeatedly demonstrate the wrongs placed upon Plaintiff and the errors by which the Commonwealth's custody of the Persians came about. The errors should not continue and Ms. Erickson's Persians should be returned immediately.

7. Upon Judge Flynn's Allowing her Motion for the Return of Property (Persians) Ms. Erickson attests that she attempted weeks of requests upon the Animal Rescue League by and through its Board Members (Defendants and attorneys) refuses to release her Persians she owns by informing her multiple times over the telephone and in person that it will not return her Persians *"under no conditions will your cats be returned to you"*. See Verified Emergency Request for TRO (Exh. 3) filed on July 19th, 2004.

8. The likelihood of no probable cause and the probability of dismissal of charges pursuant to a likelihood that the District Court issued a complaint without probable cause. *Commonwealth v. DiBennadetto*, 436 Mass. 310, 313 (2002) citing *Comm. v. McCarthy*, 385 Mass. 160 (1982), [handwritten annotation illegible]

2

8. The Massachusetts animal cruelty statute (G.L. ch. 272, sect 77  see Exh 2 c) contains language and was reflected in the Commonwealth's Bill of Particulars that, for each animal alleges Defendant "did deprive of necessary sustenance a certain animal" and the followed with "did unnecessarily fail to provide said animal with proper food, drink, sanitary environment and did knowingly and willfully permit said animal to be subjected to unnecessary suffering and cruelty of any kind".

9. Ms. Erickson was not arrested on alleged charges of cruelty to animals but evidence presented to the magistrate included the oral evidence reflected in the attached Officer McDevitt's Police Report on the unwarranted entry of May 5th, 2003 and the Affidavit of Martha M. Smith now suppressed since 5/22/04. The magistrate should have recused himself as at least 2 months before the hearing Ms. Erickson had named him a Defendant in her Federal case for issuing a fraudulent search warrant.

10. In a Memorandum of Law In Support of Motion to Dismiss, (Exh. 2 c) Defense argued that the statutory language reflected in the charges relating to 'unnecessarily fail to provide proper food' and without conceding any fact or issue, like the photos taken by the police officers on the day they entered unlawfully, and the subsequent day they seized her beloved Persians 1 opened 20lb bag of IAMS cat food was in the bedroom and 2 others were on the back porch and the water running in her apartment. The photos also contain numerous pictures of food in bowls and others with water. There was no testimony presented to the magistrate that Ms. Erickson's cats were deprived of drink. The complaint should have been dismissed in so far as is construed to allege failure to provide food and drink.

11. The statutory language reflected in the charges against Ms. Erickson relating to 'unnecessarily fail to provide proper sanitary environment', and without conceding any fact or issue like the Commonwealth was arguing that the same minimum standards for human fitness related to the living standards for pets and/or since the animal cruelty doesn't distinguish between dog, cat, horse and/or pig those conditions for animals. The arguments made to the magistrate on that issue alone ridiculous and as far as the transcript reflects no testimony,

facts presented to the magistrate raises no triable question as to whether Ms. Erickson's apartment was a proper sanitary environment for animals.

12. Lastly the statutory language of 'knowingly and willfully permit said animal to be subjected to unnecessary suffering and cruelty of any kind'. The ARL's veterinarian's affidavit suggests that cats P-40 (hernia) and P-46 (crippled leg) had experienced traumatic wounds in the past. There was no testimony as to when these wounds occurred, no testimony that they were inflicted intentionally and no testimony that Ms. Erickson inflicted them. Given that they were not fresh, and the fact that the ARL euthanized these two cats prior to Ms. Erickson expert witness evaluating them, there is no basis for assuming that they even occurred while Ms. Erickson had custody of these cats. Certainly this testimony could not remotely constitute probable cause for a violation of the language captioned above. P-15 is alleged to have a laceration on her flank consistent with "haphazard or rushed" use of clippers or consistent with a moving target (a cat squirming around) while being shorn, although no photo documented this. Similarly, "several" unspecified cats had "superficial burns" were the hair coat was closely shorn, although again no photo documents these. The ARL vet speculated that clippers could have been allowed to get to hot in continuous use. These wounds are not consistent with any "knowing and willful" form of harm. Again, this testimony could not constitute probable cause.

13. The ARL's veterinarian's affidavit and the testimony at the hearing also contained broad brush assertions that the cats as a group were not well cared for and suffered from various diseases. However, this alleged wrong simply does not fit within the language of the statute: The statute by its plain (although redundant) terms requires that animals be provided with sustenance – food; water and a clean shelter. It also prohibits the *infliction* of unnecessary cruelty or *permitting* and animal to be *subjected* to unnecessary cruelty or suffering. The active verbs "inflict" and "subject to" connote active harms like beating an animal or forcing an animal to engage in fights (e.g. dog fights). There is nothing in the statute that specifies a standard of grooming and veterinarian care. If the legislature wished to criminalize inadequate grooming or veterinary care, it would have either (a) specifically so specified or (b) generally prohibited allowing an animal to suffer, instead of *inflicting* suffering or

4

*subjecting* the animal to suffering. It did neither. The magistrate in error to issue probable cause.

**ARGUMENT**

6. There is no authority and no reasonableness to retain Ms. Erickson's property, and the Defendant's arguments deprive Ms. Erickson of her protected 14th Amendment rights whereby this Court is empowered with the ability to protect Ms. Erickson's interests and adds insult to an injury and wrong previously committed by the Commonwealth.

7. The Defendants' under the color or authority and pretenses of the statutes, laws, regulations, customs and usages of the Commonwealth of Massachusetts were clothed with the authority of the State and were purporting to act thereunder together with their employees by their acts to deprive Plaintiff her property and with intent to destroy it, deprive it of adequate medical treatment, harm it and to maliciously promote intentional inflictions of emotional distress upon Plaintiff a wrongful deprivation actionable under 42 USC sec 1983.

14th Amendment argument

8. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. 14th Amendment to the US Constitution:

   Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

9. The Commonwealth has not afforded the Plaintiff the right to be protected by society in the enjoyment of her property according to standing laws. Both the federal and state constitutions require that the Plaintiff's animals and property be returned to her immediately. *"We have no government armed in power capable of contending with human passion unbridled by morality & religion."*... *"Our Constitution was made only for a moral &*

*religious people. It [Constitution] is wholly inadequate for the government of any other".*
*John Adams*

Mass. Dept. of Agriculture's. argument

10. The Massachusetts Department of Agriculture requiring to quarantine Ms. Erickson's Persians in a facility that is regulated under those statutes for Pet Shops (a public facility) unreasonable and unnecessary as Ms. Erickson's home, though meets the structural conditions of which is described in letter dated Jul 2nd, 2004, is not open to the public. The MDA offers no reasonable argument to make these requirements and in the same instance refuses to inspect Ms. Erickson home to qualify it as meeting those conditions as to the structural efficiency demonstrating its disingenuous concern.

11. Ms. Erickson argues that her home which is not open to the public, a single structure (cottage) with wood floors covered with layers of harden acrylic easily washed everyday, containing separate rooms with separately filtered and exhausted fresh air systems, separate rooms with cages if necessary and an on call veterinarian.

12. Dr. Lund states that regulating Ms. Erickson's home as if a licensed business *"unusual and extreme"*. The Mass. Dept.'s attempt to regulate Ms. Erickson's home like a pet shop is a trend in the legislation that is being pushed by animal rights activists in an attempt to regulate hobby breeders of pets, and to intrude on ones privacy. It is the interests of the Animal Rescue League who heavily funds such legislation and a trend to eliminate an owner's rights over their property. Dr Lund addresses the ridiculousness of this type of regulation by its applicability to public facilities *"Regulations that limit public contact with potentially infectious cats are sensible for facilities where the public might be unwittingly exposed to harmful agents"* and reinforces her recommendations for the immediate transfer to Ms. Erickson's home by her important inclusion: *"the benefits of housing [the cats] in a home are considerable."*…*"I find no compelling reason to prevent the immediate return of Ms. Erickson's Persians"*. (Exh. 1, para 12 & 17)

13. Requiring Ms. Erickson to house her Persians under the statutes for a business and/or public facility 'Pet Shop' unreasonable and is intended to prevent Ms. Erickson from bringing her Persians home.

14. The MDA's argument about the zoonotic disease is also disingenuous as Dr. Lund states *"ringworm has a low level of infectivity to human"*. The US Department of Agriculture states the same. *"Simply going into a facility where ringworm-positive cats are housed will not create an infection in a person, and neither will that person mechanically transfer infectious agents outside the house on his or her person"*. Dr. Lund's statement is also supported by the National Centers for Disease Control in Atlanta who doesn't recommend household pets infected with ringworm to be quarantined nor their caregivers from the public. (Exh. 3 tab  )

15. Dr. Lund attests to having reviewed the medical records and preliminary findings by the Animal Rescue League on Plaintiff's Persians *"Certainly, though, treatment regimens can be implemented and are not prevented or complicated by the disputed cats' concurrent respiratory infections or other medical conditions"*. (Exh. 1 para 13). Dr. Lund includes in her Affidavit recommendations for her continual treatment of Ms. Erickson's Persians (Exh. 1 para 15). Ms. Erickson's home is adequate and not open to the public and she has access to at least two Veterinarians who are familiar with Ms. Erickson's Persian and are willing to assist her with her with their needs.

16. On 3/16/04 and while being cared for by the Animal Rescue League Dr. Lund, during her visit on that day took numerous photos (Exh. 4) 4a shows a cat standing up on two legs crying through the cage bars standing on and next to wet urine covered flooring. (many of these photo attached to Exh. 3 'Verified Emergency Request for Temporary Restraining Orders' filed on July 19th, 2004 therein at exhibit 2) there never has been a photo demonstrating any of Ms. Erickson's cats standing in or sitting in excrement in her home.

17. Plaintiff states that currently her cats are not being properly cared for, and is made obvious by several facts and objective photos demonstrating these Persians living in isolation (many can't even see each other while in cages) with infrequent human contact hiding as they are

7

afraid (see comparative photos on the day they were seized they were all out intermingling with the 20 or so strangers who entered their home, now living in putrid ambient air as their eyes demonstrate red swollen and irritated.

18. The Defendants' intention is to continually hold against her rights by use of it's non-legitimate, unrealistic, and unreasonable quarantine. The pretextual excuse meant to deprive Ms. Erickson of her property, with the intent to permanently harm her Persians physically and mentally as it has done to her. Plaintiff has suffered tremendously both physical and emotionally from the injuries caused by her states of fear, sadness, loss, humiliation, embarrassment, constantly in fear and anxious for the safety of her beloved Persians secondarily to that of her reputation by the Defendants' maintaining and effectuating a fraudulent claim of animal abuse under the state statutes relating to animal cruelty.

ARL Argument

19. The Animal Rescue League's argument flip-flops demonstrating its disingenuous argument at page 9 para. 2 *"To return the cats to the person and environment where they were so clearly neglected and abused would be manifestly unjust and would make a mockery of the Cruelty to Animals statute."* & *"Under no circumstances should these cats be returned to the Plaintiff absent the restrictions as mandated by the Department as there is no guarantee that the cats would be properly cared for"*.

20. Dr. Lund's attests to having reviewed the medical records and preliminary findings documented by the Animal Rescue League on Plaintiff's Persians *"I have found no indication of animal abuse by Ms. Erickson regarding her cats"*, and *"I find no compelling reason to prevent the immediate return of Ms. Erickson's Persian"*. (Exh. 1 para. 16-17)

WHEREFORE, This Honorable Court should Order the immediate release and return of Ms. Erickson's Persians.

Respectfully submitted by: Heidi K. Erickson, *pro se August 11th, 2004*   By signature herein I attest to the facts herein as true under the pains and penalties of perjury.

By signature herein I attest to having caused a true copy of this Document to the Defendants via email, facsimile and/or in hand.

8