UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
HEIDI K. ERICKSON,              )
          Plaintiff,            )
                                )
     v.                         )   C.A. No. 04-11607-DPW
                                )
COMMONWEALTH OF                 )
MASSACHUSETTS, et al.,          )
          Defendants.           )
```

<u>MEMORANDUM AND ORDER</u>

Upon review of the preliminary injunction submissions of the parties--including most recently, the plaintiff's "Response to Defendant's Opposition *Alternatively* Amendment to Memorandum in Support of Preliminary Injunction and Motion for Hearing"--I find the federal claims in this action so lacking any arguable basis that I will direct the clerk to dismiss this action.[1]

<u>BACKGROUND</u>

On July 19, 2004, at approximately 4:40 pm, plaintiff Heidi Erickson commenced this action by filing an application

---

[1]Establishing a likelihood of success on the merits is "critical" to a successful application for preliminary injunctive relief, and a party unable to convince the trial court that she will probably succeed on the merits is not eligible for interim injunctive relief. <u>Weaver v. Henderson</u>, 984 F.2d 11, 12 (1st Cir. 1993). Thus, a request for injunctive relief may be denied for failing to demonstrate a likelihood of success standing alone. <u>See New Comm Wireless Servs., Inc. v. Sprintcom, Inc.</u>, 287 F.3d 1, 13 (1st Cir. 2002). For the reasons stated below, the Complaint is ripe for dismissal because Erickson has failed to establish a likelihood of success on the merits for her motion for injunctive relief. <u>New Comm Wireless Servs., Inc.</u>, 287 F.3d at 13.

to proceed without prepayment of fees, a complaint, an "emergency" request for a temporary restraining order, an "emergency" request for a preliminary injunction, a request for a hearing, and a document production request.  <u>See</u> Docket Nos. 1-7.  In essence, she alleged that injunctive relief was necessary before the end of the day.  <u>Id.</u>

Erickson named the Commonwealth, the governor of Massachusetts, the Commissioner of the Department of Agricultural Resources (the "Department"), as well as twenty-five other defendants,[2] and sought an order preventing the Department from putting to death certain Persian cats that were removed from her home in May 2003 and subsequently placed under quarantine for ringworm by the Department.  Compl. p. 9-11; TRO Motion, p. 1-3.  Erickson is currently a defendant in state criminal proceedings on animal cruelty charges stemming from the alleged deficient treatment of these and other cats. <u>See</u> TRO Motion, Ex. 1.

It appears that in early July 2004, the Department agreed to allow the cats to be moved from an Animal Rescue League ("ARL") facility in Pembroke, Massachusetts, to a different

---

[2]These defendants include other Department of Agricultural Resources officers and employees, the Massachusetts Attorney General, the Animal Rescue League ("ARL"), and various officers, members of the board, and employees of the ARL.

location selected by Erickson provided that Erickson could demonstrate within 10 business days that a number of conditions would be satisfied at the new location.  <u>See</u> TRO Motion ¶¶ 8, 11-20, Ex. 6.  Erickson claims that these conditions were too onerous and are "unconstitutional."  <u>Id.</u> She also filed a motion for release of the cats in her pending criminal action, and the motion was denied.  TRO Motion, Ex. 1.

Erickson initially claimed in her papers that the Department had "threatened" to put down the cats "on or after" July 19, 2004.  <u>See</u> TRO Motion, ¶¶ 2, 21.  However, to the contrary, an assistant Attorney General has submitted the declaration of Brian Mitchell, a Department employee, stating that the Department has <u>not</u> issued an order for the euthanasia of the cats and that should such an order be issued, Ms. Erickson would be provided with 10-business days notice. Mitchell Declaration. p. 1.[3]  In an order dated July 23, 2004, I denied Erickson's request for a temporary restraining order because there was no threat of immediate and irreparable harm.

---

[3]Although the document is titled as an affidavit, it is in fact a declaration because it contains an unsworn declaration under pains and penalties of perjury rather than a sworn declaration.  <u>See</u> 28 U.S.C. § 1746 (unsworn declaration executed under penalty of perjury may substitute "with like force and effect" for a sworn declaration, oath, or affidavit).

On August 2, 2004, the defendants submitted an opposition to plaintiff's motion for a preliminary injunction and a hearing. Id. They also sought an order enjoining Erickson from future filings absent leave of Court.    Id.

Since March 2003, Erickson has filed, or been involved in, at least six other actions concerning the seizure of allegedly diseased or deceased cats from her home, her state criminal proceedings for animal cruelty, and her evictions from several residences due to the alleged unsanitary conditions resulting from her keeping of those cats.[4]  In a parallel decision today, I have determined that Erickson should be enjoined from filing further suits in this Court

---

[4] See, e.g., Erickson v. Kovacev, C.A. No. 03-10438-DPW (remanding; attempt to remove housing court proceedings to this Court); Erickson v. Administrative Office, et al., C.A. No. 03-10460-NMG (dismissing ADA claims based on alleged discriminatory treatment in state court proceedings); Erickson v. Reilly, et al., C.A. No. 03-10785-RCL (pending; civil rights claims based on seizure of cats); Erickson v. Watertown Health Dep't, et al., C.A. No. 03-10999-RCL (removed action administratively dismissed on abstention grounds; civil rights claims based on events surrounding seizure of cats); Erickson v. Somers, C.A. No. 04-10629-DPW (dismissing discrimination claims based on alleged dissemination of information about plaintiff's notoriety to prospective landlords), appeal filed, No. 04-1594; Erickson v. CPCS, et al., C.A. No. 04-111659-RCL (filed 7/26/04 and pending) (claims about alleged ineffective legal assistance at state criminal hearings for animal cruelty).

based on her history of frivolous filings.[5]  <u>Erickson v.</u>
<u>Somers</u>, C.A. No. 04-10629-DPW, <u>appeal filed</u>, No. 04-1594.

I.  <u>This Court May Screen the Complaint</u>

A complaint filed by a plaintiff <u>in forma pauperis</u> may be
dismissed "at any time" if the Court determines that it lacks
an arguable basis in law or fact, seeks relief against a
defendant who is immune from liability, or fails to state a
claim.  28 U.S.C. § 1915(e)(2)(b).  Where claims lack an
arguable basis in law, they may be dismissed <u>sua sponte</u> and
without notice.  <u>Neitzke v. Williams</u>, 490 U.S. 319, 327-328

---

[5]In addition to the six actions discussed above and the
instant action, Erickson has sought to litigate nearly a dozen
other cases in this Court and has been enjoined from filing
claims against Harvard University and its employees.  <u>See,</u>
<u>e.g.</u>, <u>Erickson v. Commonwealth</u>, C.A. No. 94-10354-RWZ (granting
respondent's motion to dismiss); <u>Erickson v. Harvard Univ.</u>, C.A. No.
94-12472-RGS (granting defendant's motion to dismiss), <u>appeal</u>
<u>dismissed</u>, No. 95-1335 (1st Cir. July 5, 1995); <u>Erickson v. Harvard</u>
<u>Univ., et al.</u>, C.A. No. 95-10698-PBS (dismissing action
removed by defendants; Erickson enjoined from filing future
suits against defendants) <u>appeal dismissed</u>, No. 95-2368 (1st
Cir. Apr. 30, 1996); <u>Erickson v. DeSouza</u>, C.A. No. 95-10863-JLT
(remanding to Middlesex Superior Court); <u>Erickson v. Mass. Committee</u>
<u>for Public Counsel Servs., et al.</u>, C.A. No. 95-12575-JLT (dismissing
under former § 1915(d)); <u>Maziarz, et al. v. Erickson</u>, C.A. No. 96-
10719-MLW (remanding); <u>Erickson v. Cambridge/Somerville Elder Servs.</u>,
C.A. No. 00-12523-EFH (§ 2254 petition dismissed with prejudice);
<u>Viola v. Erickson</u>, C.A. No. 01-11135-DPW (remanding); <u>Erickson v.</u>
<u>Nahigan, et al.</u>, C.A. No. 02-10918-JLT (remanding, plaintiff advised
of Court's authority to enjoin); <u>Erickson v. Bersani, et al.</u>, C.A.
No. 02-11580-JLT (plaintiff directed to demonstrate good cause why
she should not be enjoined; action dismissed under § 1915(e)(2));
<u>Erickson v. State Racing Comn'n, et al.</u>, C.A. No. 04-11660-WGY (filed
7/26/04 and pending) (civil rights claims based on denial of stable
employee license).

(1989) (interpreting the former § 1915(d)); Denton v.
Hernandez, 504 U.S. 25, 32-33 (1992); see Fredyma v. AT&T
Network Sys., Inc., 935 F. 2d 368, 368 (1st Cir. 1991) (per
curiam) (stating that a sua sponte dismissal without notice is
appropriate under § 1915 where a claim is premised on an
"indisputably meritless legal theory" or "factual allegations
that are clearly baseless").  Here the parties have had an
opportunity to address the merits in the preliminary
injunction motion submissions.  See Note 1 supra.

Claims lack an arguable or rational basis in law when
they are brought against a defendant who is clearly entitled
to immunity or involve the infringement of a legal interest
which clearly does not exist.  See Neitzke, 490 U.S. at
327-328; accord Denton, 504 U.S. at 32 ("clearly baseless"
actions may be dismissed); Mack v. Massachusetts, 204 F.
Supp.2d 163, 166 (D. Mass. 2002) (dismissing for lack of
subject matter jurisdiction).

II.  The Complaint Is Subject to Dismissal

The gravamen of plaintiff's complaint is that the
defendants' refusal to release her quarantined cats to her
custody as well as the Department's authority to destroy them,
if it so decides, violate her constitutional and statutory
rights.  See Counts 1-3 (§ 1983 claims under First and

6

Fourteenth Amendments); Count 5 (ADA claims); Count 8 (RICO).

For myriad reasons, this Court lacks subject-matter

jurisdiction over certain of plaintiff's claims, and nearly

all, if not all, of plaintiff's claims lack an arguable basis

in law.[6]

    1.   The Commonwealth and the Defendants in Their
        <u>Official Capacities Have Eleventh Amendment Immunity</u>

Plaintiff's Section 1983 and RICO claims against the

Commonwealth and claims for damages against the defendants who

are state officials in their official capacities[7] are barred

by the Eleventh Amendment. The Eleventh Amendment[8] generally

---

[6]Because the complaint is subject to dismissal for the
reasons stated below, this Memorandum and Order does not
discuss all alternative bases of dismissal, such as Erickson's
failure to allege that many of the defendants had any direct
involvement in the actions at issue. <u>See, e.g.</u>, <u>Pinto v.
Nettleship</u>, 737 F.2d 130, 132 (1st Cir. 1984) (no <u>respondeat
superior</u> liability under § 1983; liability can only be imposed
upon officials who were involved personally in the deprivation
of constitutional rights); <u>accord</u> <u>Guzman v. City of Cranston</u>,
812 F.2d 24, 26 (1st Cir. 1987) (same); <u>Rodriquez-Vazquez v.
Cintron-Rodriquez</u>, 160 F. Supp. 2d 204, 210-213 (D. P.R. 2001)
(dismissing claims, allegation that defendant was "ultimately
responsible for the selection and/or supervision and/or
training and/or discipline of his subordinates" was
insufficient).

[7]For purposes of this memorandum and order only, I will
assume that all of the defendants are "state actors."

[8]The Eleventh Amendment to the United States Constitution
provides that:

    The Judicial power of the United States shall not be
    construed to extend to any suit in law or equity,

is recognized as a bar to suits against a State, its
departments and agencies unless the State has consented to
suit.  <u>Alabama v. Pugh</u>, 438 U.S. 781, 781 (1978) (per curiam).
Unless a State has "waived its Eleventh Amendment immunity or
Congress has overridden it, ... a State cannot be sued
directly in its own name regardless of the relief sought."
<u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n. 14 (1985) (citing
<u>Pugh</u>); <u>cf.</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71
(1989) (neither state nor its officials are "persons" for purposes of
§ 1983).

     Here, the Commonwealth has not consented to suit**,** <u>see</u>
<u>Brown v. Newberger</u>, 291 F.3d 89, 92 (1ˢᵗ Cir. 2002) (stating
that there has been no unequivocal abrogation of the
Commonwealth's Eleventh Amendment immunity), nor did Congress,
in enacting RICO, 18 U.S.C. § 1961 <u>et seq.</u>, intend to abrogate
the immunity afforded by the Eleventh Amendment.  <u>See, e.g.,</u>
<u>Bair v. Krug</u>, 853 F.2d 672, 674-75 (9ᵗʰ Cir.1988) (holding
<u>inter</u> <u>alia</u> in action alleging civil RICO claims that
appellants had no argued or proffered authority that Congress

─────────────

          commenced or prosecuted against one of the United
          States by Citizens of another State, or by Citizens
          or Subjects of any Foreign State.

U.S. Const. Amend. XIV.

had overridden Eleventh Amendment immunity); <u>accord</u> <u>Gaines v.
Texas Tech. Univ.</u>, 965 F. Supp. 886, 889 (N.D. Tex. 1997)
(same); <u>McMaster v. Minnesota</u>, 819 F. Supp 1429, 1434 (D.
Minn. 1993) (same), <u>aff'd</u>, 30 F.3d 976 (8th Cir. 1994).  Thus,
the Eleventh Amendment bars plaintiff's Section 1983 and RICO
claims against the Commonwealth.  <u>See</u> <u>Puerto Rico Aqueduct &
Sewer Auth. v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 142-144 (1993)
(11th Amendment operates as a withdrawal of jurisdiction).

Similarly, the Eleventh Amendment confers immunity from
suit upon state officials when "the state is the real
substantial party in interest," that is, when "the judgment
sought would expend itself on the public treasury ..., or
interfere with the public administration...." <u>Pennhurst State
Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 101-102, n. 11 (1984)
(citations omitted); <u>accord</u> <u>Hafer v. Melo</u>, 502 U.S. 21, 25
(1991) (same).

Therefore, to the extent that plaintiff seeks monetary
relief from any of the defendants in their "official"
capacities, the Eleventh Amendment bars relief and plaintiff's
claims against defendants in their official capacities are
subject to dismissal.  <u>Pennhurst</u>, 465 U.S. at 101-102 (stating
that "as when the State itself is named as the defendant, a
suit against state officials that is in fact a suit against a

State is barred regardless of whether it seeks damages or injunctive relief."); accord Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) (although state officials are literally persons, a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office).

    2.   The Fourteenth Amendment Claims

    a.   The Property and Due Process Claims

It is well-settled that a state, in the exercise of its police power, may establish quarantines to prevent public exposure to disease or injury, and that such laws are constitutional. Oregon-Washington R. & Nav. Co. v. State of Washington, 270 U.S. 87, (1926).[9]

_____

    [9]As the Supreme Judicial Court stated in Blair v. Forehand, 100 Mass. 136 (1868):

> "All rights of property are held subject to such
> reasonable control and regulation of the mode of
> keeping and use as the legislature, under the police
> power vested in them by the Constitution of the
> Commonwealth, may think necessary for the preventing
> of injuries to the rights of others and the security
> of public health and welfare.  In the exercise of
> this power, the legislature may not only provide
> that certain kinds of property (either absolutely,
> or when held in such a manner or under such
> circumstances as to be injurious, dangerous or
> noxious) may be seized and confiscated upon legal
> process after notice and hearing; but may also, when
> necessary to inure the public safety, authorize them
> to be summarily destroyed by the municipal
> authorities without previous notice to the owner. .

Even assuming that plaintiff has a cognizable property interest in the quarantined cats, those property claims are not ripe because no decision has been made regarding disposition of the cats. In order to state a Fifth and Fourteenth Amendment takings claim,[10] a plaintiff must demonstrate that (1) the government entity involved has reached a final decision concerning the property at issue; and (2) that the plaintiff has sought and was denied just compensation by means of an adequate state procedure. Pascoag Reservoir & Dam, LLC v. Rhode Island, 337 F.3d 87, 91 (1st Cir. 2003) (citing Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186 (1985)).

Where there is no uncompensated taking, there is nothing to litigate under Section 1983. Id.; accord Gilbert v. City of Cambridge, 932 F.2d 51, 62 (1st Cir. 1991) (plaintiff may not seek compensation in federal court for an alleged taking without first resorting to the state process). Thus, Erickson's Fourteenth Amendment property claims are not ripe because the Department has not

---

.There is no kind of property over which the exercise of this power is more frequent or more necessary, than [live animals]."

Id. at 139-140.

[10]See, e.g., Dolan v. City of Tigard, 512 U.S. 374, 382 (1994) (citing Chicago B.&Q. R. Co. v. Chicago, 166 U.S. 226, 239 (1897)) (Takings Clause of the Fifth Amendment of the United States Constitution is made applicable to the States through the Fourteenth Amendment).

rendered a decision to euthanize the cats (and indeed, many never do so), and because Massachusetts law provides for compensation for owners of quarantined animals. Pascoag Reservoir, 337 F .3d at 92-93; accord Gilbert v. City of Cambridge, 932 F.2d 51, 64 (1st Cir. 1991) (so long as the State provides an adequate process for securing compensation, federal equitable intervention in advance of resort to that procedure is premature). see Mass. Gen. Laws chapter 129, § 21 (damages, arbitration, petition for assessment of damages). The premature nature of plaintiff's claims also forecloses review under the Due Process Clause. See Williamson Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 199-200 (1985) (dismissal for prematurity of claim is applicable whether plaintiff's claims analyzed under either the Takings or Due Process clauses).

   b.  The Equal Protection Claims

   The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." United States Const. Amend XIV. The Equal Protection Clause does not forbid classifications; it simply prevents governmental decision-makers from treating differently persons who are in all relevant respects alike. See F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920). Unless a classification warrants some form of heightened review because it impacts a fundamental right or categorizes on the basis of an inherently suspect characteristic, the

12

Equal Protection Clause requires only that the classification be rationally related to a legitimate state interest. <u>See, e.g.</u>, <u>Cleburne v. Cleburne Living Ctr, Inc.</u>, 473 U.S. 432, 439-42 (1985).

As an initial matter, plaintiff's Equal Protection claims fail because she fails to allege that any purported unequal treatment is based on any constitutionally impermissible motive. <u>Judge v. City of Lowell</u>, 160 F.3d 67, 74 (1st Cir. 1998) (in order to state a claim under the Equal Protection clause, a plaintiff must allege not only that the defendants were aware of her race at the time of their actions but also that defendants acted because of her race); <u>accord</u> <u>Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortgage Fin. Corp.</u>, 246 F.3d 1, 7-8 (1st Cir. 2001) (same).

Similarly, because Erickson has not alleged that any "fundamental right" has been violated, defendants' actions need only be "rationally related" to a legitimate governmental interest. <u>Gilbert</u>, 932 F.2d at 66; <u>accord</u> <u>Johanson v. Board of Animal Health</u>, 601 F. Supp. 1018, 1021-1022 (D. Minn. 1985) (dismissing, classification of diseased hogs was entirely rationale). Because facially-neutral, legitimate reasons exist for the quarantine of diseased animals, Erickson's Equal Protection claims are subject to dismissal on this basis as well. <u>Gilbert</u>, 932 F.2d at 66 (affirming dismissal); <u>Johanson</u>, 601 F. Supp. at 1021-1022 (dismissing).

3.  <u>The First Amendment Claims</u>

Erickson's bare and conclusory allegations, without more, do not implicate any First Amendment right.  <u>See, e.g.</u>, <u>Police Dep't of Chicago v. Mosley</u>, 408 U.S. 92, 95 (1972) ("the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content."); <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461 U.S. 731, 741 (1983) ("the right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances.").

4.  <u>The ADA Claims</u>

Even assuming that the 11th Amendment does not bar plaintiff's ADA claims against the Commonwealth and the state actor defendants in their official capacities,[11] her claims fail because she has not

_____

[11]The Supreme Court, in a 5-4 decision, recently held that the provisions of Title II of the ADA, as applied to cases involving the right of access to the courts, constitute a valid exercise of Congress's Section 5 authority to enforce the guarantees of the Fourteenth Amendment and are not barred by the Eleventh Amendment.  <u>Tennessee v. Lane</u>, 541 U.S. ___, 124 S. Ct. 1978, 1994 (2004).  However, it is currently unclear in this and other circuits to what extent the holding of <u>Lane</u> applies to other constitutional rights.

Most courts appear to be in agreement, however, that the ADA does not apply to officials in their individual capacities.  <u>See, e.g.</u>, <u>Alsbrook v. City of Maumelle</u>, 184 F.3d 999, 1005 n. 8 (8th Cir. 1999) (no action under Title II against officials in individual capacities); <u>accord Mitchell v. Massachusetts Dept. of Correction</u>, 190 F. Supp. 2d 204, 211 (D. Mass. 2002) (same).  Thus, Erickson's claims against the defendants in their individual capacities are subject to dismissal.  <u>Alsbrook</u>, 184 F.3d at 1005 n. 8; <u>Mitchell</u>, 190 F. Supp. 2d at 211.

alleged, nor does it appear that she can so allege, that she has been deprived of the benefits of any "program, activity, or service" as those terms are defined by the Act.

In enacting Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12134, Congress intended to prohibit discrimination against qualified individuals with disabilities as to all programs, activities, and services of public entities. See 42 U.S.C. § 12132; Parker v. Universidad de Puerto Rico, 225 F.3d 1, 4 (1st Cir. 2000).

First, Erickson has failed to allege facts demonstrating that she is a "qualified individual with a disability," a defect fatal to her ADA claims. See McDonald v. Commonwealth, 901 F. Supp. 471, 478 (D. Mass. 1995) (dismissing where plaintiff alleged no underlying facts to support claim that he was "qualified individual with disability"). Moreover, she also does not allege (a) that she was denied access to any "program," "activity" or "service"; (b) that access to quarantined cats would constitute a program, activity or service within the meaning of the ADA; or (c) that there was any discriminatory animus by defendants, each of which is a valid ground of dismissal. See, e.g., Atkins v. County of Orange, 251 F. Supp. 2d 1225, 1232 (S.D.N.Y. 2003) (dismissing where plaintiffs did not allege that they were denied the benefits of a service, program or activity or any discriminatory animus); Aswegan v. Bruhl, 113 F.3d

109, 110 (8th Cir. 1997) (cable television at prison is not a program, activity, or service); <u>United States v. City of Charlotte</u>, 904 F. Supp. 482, 484-485 (W.D. N.C. 1995) (municipal zoning); <u>cf.</u> <u>Doe v. Pfrommer</u>, 148 F.3d 73, 83-84 (2d Cir.1998) (dismissing on summary judgment, central purpose of the ADA is to assure that disabled individuals receive "evenhanded treatment" in relation to the able-bodied; plaintiff did not challenge illegal discrimination against the disabled, but the substance of services provided to him).

   5.  <u>The RICO Claims</u>

   Other than a general reference to the RICO statute, Erickson fails to allege what provisions of that statute she believes have been violated by the defendants.  Section 1964 creates a private right of action for litigants claiming a violation of Section 1962 of the RICO statute.  18 U.S.C. § 1964(a).[12]  A generous reading of plaintiff's complaint indicates that Section 1962(c) or 1962(d) (conspiring to violate 1962(c)) are the only sections that reasonably can be read to apply to plaintiff's claims.[13]  Plaintiff's

---

   [12]Plaintiff does not cite Section 1964(a) in her complaint, but I will construe their claims under that statute.  Plaintiff, of course, cannot bring a criminal RICO action.  <u>Cok v. Cosentino</u>, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam) (stating that only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 1961-1963).

   [13]Sections 1962(a) and (b) clearly are inapplicable because they involve the investment of funds in an enterprise or the acquisition of an interest in an enterprise which is engaged in or affects interstate or foreign commerce.  18

allegations under either section are subject to dismissal as lacking any arguable legal merit.

In order to state a claim under Section 1962(c), a plaintiff must allege (a) conduct (b) of an enterprise (c) through a pattern of (d) racketeering activity. <u>Sedima, S.P.R.L. v. Imrex Co., Inc.</u>, 473 U.S. 479, 496 (1985).[14] A plaintiff has standing and can only recover to the extent that she has been injured in her business or property by the conduct constituting the violation. <u>Id.</u>

A pattern of racketeering activity involves at least two predicate acts. 18 U.S.C. § 1961(5); <u>Miranda v. Ponce Fed. Bank</u>, 948 F.2d 41, 45 (1st Cir. 1991) ("[I]t is settled beyond peradventure that civil liability under 18 U.S.C. § 1962(c) requires a named defendant to have participated in the commission of two or more

---

U.S.C. §§ 1962(a), (b). Plaintiff has not alleged any facts that would give rise to claims under these subsections, or to a claim that the defendants conspired to violate those sections under Section 1962(d).

[14]Section 1962(c) creates liability for persons:

> employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, [who] conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

predicate crimes within the compendium described in 18 U.S.C. §
1961(1).")  Predicate acts are acts indictable under certain
specified laws listed in the RICO statute.  <u>See</u> 18 U.S.C. § 1961(1).

Erickson only makes bare and conclusory allegations regarding
defendants' alleged collective racketeering activity and fails to
identify specifically any predicate acts or to allege any facts that
would indicate that any violation of the laws specified in Section
1961(1) has occurred.  She thus has failed to state a RICO claim.
<u>Cok v. Cosentino</u>, 876 F.2d 1, 2 (1st Cir. 1989) (affirming dismissal
for failure to identify requisite predicate acts).[15]

In order to state a claim for conspiracy to violate Section
1962(c), a plaintiff must allege, at a minimum, that "each defendant
agreed to commit two or more specified predicate crimes in addition
to [alleging] an agreement to participate in the conduct of an

---

[15]Another deficiency in plaintiff's complaint is her
failure to allege that an enterprise existed.  An enterprise
is "any individual, partnership, corporation, association, or
other legal entity, and any union or group of individuals
associated in fact although not a legal entity."  18 U.S.C. §
1961(4).  Plaintiff does not allege that the defendants were
together part of any legal entity that existed, nor do they
allege facts to demonstrate how the defendants purportedly
were associated in fact.  Moreover, a defendant named as a
"person" who has violated the RICO statute cannot also serve
as the RICO enterprise that the person is allegedly conducting
in violation of Section 1962(c).  <u>Doyle v. Hasbro, Inc.</u>, 103
F.3d 186, 191 (1st Cir. 1996).  Therefore, none of the named
defendants can be considered an "enterprise" under Section
1962(c).  <u>Id.</u>  Plaintiff's failure to identify any enterprise
distinct from a named defendant in and of itself constitutes
sufficient grounds to dismiss her claims.  <u>Id.</u>

'enterprise's' affairs through a 'pattern of racketeering activity.'"
Gott v. Simpson, 745 F. Supp. 765, 772 (D. Me. 1990) (citing United
States v. Winter, 663 F.2d 1120, 1136 (1st Cir. 1981)).  A bare
assertion that defendants conspired to violate RICO is insufficient
to state a claim for a RICO conspiracy.  Id.  A plaintiff must make
factual allegations respecting the material elements of the offense,
including the element of an agreement to violate RICO.  Id.

Because plaintiff has failed to allege a Section 1962(c) claim
(see supra) and has not alleged facts indicating an agreement to
violate RICO, plaintiffs' Section 1962(d) claims will be dismissed.
Id.; accord Tapia-Ortiz v. Winter, 185 F.3d 8, 11 (2d Cir. 1999)
(dismissing where plaintiff alleged no facts demonstrating that
judges engaged in RICO conspiracy).

III.   The Remaining State-Law Based Claims

Counts 4-6 of the complaint are based on a legal theory
of "negligent training" and Chapters 151B, 151D, and 93A of
Massachusetts law.  Under 28 U.S.C. § 1367, a district court may
decline to exercise supplemental jurisdiction if the district court
has dismissed all claims under which it has original jurisdiction.
28 U.S.C. § 1367(c); Gonzalez-De Blasnini v. Family Dep't, __ F.3d
__, 2004 WL 1718349, at *6 (1st Cir. Aug. 2, 2004).

As a general rule the unfavorable disposition of a plaintiff's
federal claims at the early stages of a suit will trigger the

19

dismissal without prejudice of any supplemental state law claims. Gonzalez-De Blasnini, 2004 WL 1718349, at *6 (citing Rodrqiuez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995). I decline to exercise supplemental jurisdiction and will dismiss plaintiff's state law claims without prejudice. Gonzalez-De Blasnini, 2004 WL 1718349, at *6.

### IV. The Hearing, Preliminary Injunction and Discovery Requests

Because this action will be dismissed, Erickson's requests for oral argument, a preliminary injunction, and for the production of documents will be denied.

### V. The Motion For An Order Enjoining Erickson

Because I am today independently ordering that Erickson be enjoined from filing suit in another matter without prior approval of a judge of this Court, I will deny defendant's motion for such an order in this case.

### CONCLUSION

ACCORDINGLY,

(1) The federal claims in the Complaint shall be DISMISSED as lacking an arguable basis in law under Section 1915(e)(2);

(2) The state-law claims in the Complaint are DISMISSED WITHOUT PREJUDICE;

(3) Plaintiff's Motions for (i) a Preliminary Injunction

20

(Docket No. 4); (ii) an Oral Hearing (Docket No. 6); and (iii) Production of Documents (Docket No. 7) are DENIED.

(4) Defendants' motion for an order enjoining plaintiff from filing suits absent leave of court is DENIED.

SO ORDERED.

Dated at Boston, Massachusetts, this <u>16th</u> day of <u>August</u> 2004.


<u>s/ Douglas P. Woodlock</u>
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE