UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO 04-11607 *DPW*

HEIDI K. ERICKSON
   Plaintiff

**AFFIDAVIT CATHERINE LUND, D.V.M.**
IN SUPPORT OF TEMPORARY RESTRAINING ORDERS AND
MOTION TO RECONSIDER PRELIMINARY INJUNCTION

COMMONWEALTH OF MASSACHUSETTS
   Defendants

1. Now comes, Plaintiff, pro se in the above entitled matter seeking an emergency temporary Orders to prevent the unnecessary destruction of her beloved family of Persians from an Order to Euthanize issued 8/18/04 and attaches herein an original signed Affidavit of Catherine, Lund, DVM dated August 12th, 2004 and served upon the Defendants. The Orders are simply not supported by Veterinarian medicine.

2. Despite the fact that Dr. Lund's affidavit was written days before the Defendant's Ordered the euthanasia of all Erickson's cats. Dr. Lund attests "*Quarantine typically exist to protect the public against illness, or in circumstances where animal life is threatened (such as an outbreak of fatal parvovirus in a shelter). Ringworm is not fatal, and is not a public health risk when pets involved are not commingling with the public*".

3. Dr. Lund: "*Simply going into a facility where ringworm-positive cats are housed will not create an infection in a person, and neither will that person mechanically transfer infectious agents outside the house on his or her person*".

4. Dr. Lund's Affidavit she write after her personal review of the "Mass. Dept. of Agricultures letters" para 9; and knowing the medical records on the cats para 7 & 8; attests at paragraph 17 "*I find no compelling reason to prevent the immediate return of Ms. Erickson's Persians*". And at paragraph 10 "*I find no compelling reason to isolate these cats in a quarantine situation that which is proposed by the [Defendants'] Department of Agriculture*" and executed on August 12th, 2004.

Respectfully submitted by
Heidi K. Erickson  August 23rd, 2004  I attest to have caused a copy upon Defendants

21

AFFIDAVIT OF CATHERINE LUND, D.V.M.

I, Catherine Lund, do depose and state under pains and penalties of perjury the following:

1.   I am a Doctor of Veterinary Medicine.

2.   I have specialized primarily in the treatment of cats since receiving my D.V.M. from Auburn University in 1986.

3.   I currently own and direct City Kitty Veterinary Care for Cats in Providence, Rhode Island.

4.   I am a member of the American Association of Feline Practitioners.

5.   I am the immediate Past- President of the Rhode Island Veterinary Medical Association.

6.   A current copy of my resume is attached as Exhibit A and is a true and accurate reflection of my professional experience and credentials.

7.   I have reviewed medical records from the Animal Rescue League regarding Ms. Erickson's cats seized from her home on 5/7/03.

8.   On 3/16/04 I visited Ms Erickson's cats held by the Animal Rescue League at 599 Washington St. in Pembroke and examined each.

9.   I have read the Massachusetts Department of Agriculture's letters and recommendations regarding the quarantine of Ms. Erickson's cats held at the Animal Rescue League.

10.  As explained hereinbelow, I find no compelling reason to isolate these cats in a quarantine situation that which is proposed by the Department of Agriculture.

11   The cats referred to as (ARL's ID P1-P52) are owned by Ms. Erickson and before their seizure lived in Ms Erickson's home as a closed colony. Ms. Erickson's home is a typical residential structure, such as where pets are commonly housed. Ms. Erickson's home is not a public facility, and applications and restrictions for public facilities should not apply to her home and the pets housed inside it.

12.  Respiratory viruses pose a contagion risk only from cat to cat. Chronic exposure certainly produces a level of diminished reactivity in the affected individuals, and the stress of being housed in a strange environment has been shown to increase the shedding of feline herpes virus. Therefore, because this is a stable-size population (and comfortable with each other), the benefits of housing them in a home are considerable. Complete elimination of the elements that compose feline upper respiratory disease (URD) from cat populations is not realistic, except under the most

1

specific pathogen-free conditions, and URD may spread readily, even in the presence of aggressive environmental management (August, Consultations in Feline Medicine, Vol. 3). In fact, environmental contamination is probably the lesser of the means by which URD agents are transmitted. There is some evidence that long-term use of lysine can minimize both clinical signs and viral shedding.

13.    The true zoonotic disease here, ringworm, has a low level of infectivity to humans. Long-haired cats, particularly Persians and Himalayans, have reported difficulties clearing infections, and might be more susceptible to reinfections (Hnilica, Dermatophyte Treatment for Catteries and Multicat Homes). Humans, however, pick this up from contact with sources of the fungus, such as petting or holding infected cats. Simply going into a facility where ringworm-positive cats are housed will not create an infection in a person, and neither will that person mechanically transfer infectious agents outside the house on his or her person. Controlling ringworm in a cattery is complicated and often unsuccessful. Certainly though, treatment regimens can be implemented and are not prevented or complicated by the disputed cats' concurrent respiratory infections or other medical conditions.

14.    Regulations that limit public contact with potentially infectious cats are sensible for facilities where the public might be unwittingly exposed to harmful agents. However, in the context of a home environment, which is not a licensed business and is not regulated as such, applying those same regulations seems unusual and extreme. Quarantines typically exist to protect the public against illness, or in circumstances where animal life is threatened (such as an outbreak of fatal parvovirus in a shelter). Ringworm is not fatal, and is not a public health risk when pets involved are not co-mingling with the public.

15.    I propose a dermatophyte treatment schedule for the cats with itraconazole together with environmental management including vacuuming and air/heat filter changes. All cats will also be supplemented with oral lysine, in an effort to ameliorate clinical signs of the URD.

16.    I have found no indication of animal abuse by Ms. Erickson regarding her cats to be documented by a review of the preliminary medical records supplied to me by the Animal Rescue League.

17    I find no compelling reason to prevent the immediate return of Ms. Erickson's Persians.


Signed under the pains and penalties of perjury this/2 day of August 2004.

Catherine Lund, DVM

2