UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO 04-11607 DPW

HEIDI K. ERICKSON
   *Plaintiff*

VERIFIED MOTION and
MEMORANDUM OF LAW IN SUPPORT OF
STAY OF ORDERS TO EUTHANIZE

MASSACHUSETTS DEPARTMENT OF AGRICULTURE,
   *Defendants*

Plaintiff, Ms. Erickson, relying on her previously filed Verified Complaint, Motion/Memo for Preliminary Injunction, Response to Defendant's Opposition files Motion for TRO; seeking emergency relief to Stay Orders issued 8/18/04 by Defendant's 'Orders to Euthanize' upon her beloved cats (Ex 1) and to Vacate Dismissal issued on 8/16/04.

1. Plaintiff claims that the Defendant's Mass. Department of Agriculture by it's Director of Animal Health Brad Mitchell have made an unfounded and unreasonable decision to Order the Euthanasia of her beloved purebred Persian companion cats "Director … make reasonable orders …care or treatment or destruction of animals…" and "of the opinion the public good so requires shall cause … to be killed without appraisal or payment". (Ex. 1)

2. Plaintiff argues the agency Order unreasonable, capricious, and arbitrary decision to euthanized her beloved purebred Persian companion cats because of *microsporum canis*, a mild skin rash caused by *dermatophytes* a *"non-lethal and treatable disease" "and can be compared to a flea infection …flea infection poses a greater risk,…but neither poses a significant public health risk that would require terminal elimination of the carrier"* belies the statutory intent of GL c129 s2 & 11. The MDA orders that these animals be euthanized verses ordering them to be treated inconsistent with public policy, current standard veterinary practices and Catherine Lund, D.V.M., Member of the American Association of Feline Practitioners and recent past President of the Rhode Island Veterinary Association recommends *"treatment regimens can be implemented and are not prevented or complicated by the disputed cats concurrent … medical conditions"* (see Affidavit Lund Ex. 3 para 13, and 15) Director could Order the cats to be treated according to Dr. Lund's recommendations and pursuant to G.L. c129 s2 "Director enforce orders …to the care and treatment" but instead the Director orders the beloved, valuable intrinsically irreplaceable purebred Persian companion cats to be euthanized, an abuse of his discretion.

3. The MDA's reasons to conclude euthanasia of Ms. Erickson's Persians appropriate *"unsupported by medical fact"*, *"medically unfounded"* *"there is no reasonable and/or cognizable threat to the general public"* and *"inconsistent with good public health practices"* and *"this type of terminal elimination 'Order of Euthanasia' of a group of companion animals for non-lethal, treatable disease is of significant public interest and I disagree with anything less then immediately returning Ms. Erickson's cats…"* (See Affidavit Dr. Fraser at Ex. 2 para 7, 8, 9, 27 and Conclusion respectively).

1

4. There is no reasonableness to Order the Euthanasia and/or to even retain Ms. Erickson's property under a quarantine and therefore no authority. The Defendant's abusive Orders deprive Ms. Erickson of her protections under the Constitution of the United States and the Massachusetts Declaration of Rights whereby this Court is empowered with the ability to protect Ms. Erickson's interests and Stay, Quash and Revoke the Orders to Euthanize.

5. The Defendants' under the color or authority and pretenses of the statutes, laws, regulations, customs and usages of the Commonwealth of Massachusetts were clothed with the authority of the State and were purporting to act thereunder together with their employees by their acts to deprive Plaintiff her property and with intent to destroy it, deprive it of adequate medical treatment, harm it and to maliciously promote intentional inflictions of emotional distress upon Plaintiff a wrongful deprivation that should not be tolerated nor condoned.

6. The Commonwealth has not afforded the Plaintiff the right to be protected by society in the enjoyment of her property according to standing laws. Both the state and moral conscience require that the Plaintiff's animals be returned to her immediately.

ABUSE OF DISCRETION

7. Dr. Fraser "*I disagree with the reasoning of the issuance of said Orders to Euthanize and I find the Mass. Department of Agriculture Orders to be far from appropriate, unnecessary, unwarranted and outrageous ... inherently unsupported by medical fact*". (Ex. 2) para.6.

8. Dr. Lund: "*Simply going into a facility where ringworm-positive cats are housed will not create an infection in a person, and neither will that person mechanically transfer infectious agents outside the house on his or her person*".

9. Dr. Lund's Affidavit signed on 8/12/04 is written before the Defendant's issued it's Orders of 8/18/04, she writes finding from her personal review of the Mass. Dept. of Agricultures letters and knowing the medical records on the cats attests at (Ex.3 para. 17 "*I find no compelling reason to prevent the immediate return of Ms. Erickson's Persians*". And at paragraph 10 "*I find no compelling reason to isolate these cats in a quarantine situation that which is proposed by the [Defendants'] Department of Agriculture*" August 12th, 2004.

10. Both Dr. Fraser's and Dr. Lund's statements made in their respective affidavits and also supported by the National Centers for Disease Control in Atlanta who doesn't recommend household pets infected with ringworm to be quarantined nor their caregivers from the public.(Ex. 5) supports the Plaintiff's arguments for a Stay and Preliminary Injunction.

11. Dr. Fraser points to *the leading authority 'Harrison's Principal of Internal Medicine* (Ex. 4) (relied upon by *all public health practitioners* (see Affidavit Fraser Ex. 2 para. 12 & 14) taken together with the National Centers for Disease Control in Atlanta website on pets and ringworm (Ex. 5) Both authorities refer to the zoonotic disease known as *microsporum canis* (ringworm) having a "*low level of infectivity to human*" and does not advise and/or recommend euthanasia , quarantine, or even isolation.

2

12. Dr. Fraser at paragraph 9 *"To terminally dispose of a companion pet an extreme measure in the first place but in this case, were the causative agent is well known to be both non-lethal to both humans and animals but also known to having a "low infectivity" therefore a low potential health risk, unnecessary and inhumane." "... there is relatively no public health concern in the privacy of a ones home and infectivity if it could occur, but be by direct contact. Therefore, there is no reasonable and/or cognizable threat to the general public, to Ms. Erickson's animals or to Ms. Erickson herself"*.

13. Dr. Fraser at paragraph 10 *"Person to person transfer even after exposure of microsporum canis is extremely low while a simple mild hand washing between and after contact with a known infected animal and or person may totally prevent the transfer altogether."*

14. Dr. Lund attests to having reviewed the medical records and preliminary findings by the Animal Rescue League on Plaintiff's Persians *"Certainly, though, treatment regimens can be implemented and are not prevented or complicated by the disputed cats' concurrent respiratory infections or other medical conditions"*. (Ex. 3 para 13). Dr. Lund includes in her Affidavit recommendations for her continual treatment of the Persians (Ex. 3 para 15).

15. Dr. Lund emphasizes at paragraph 12 of her Affidavit: *"the benefits of housing [the Persians] in a home are considerable"* and *"Simply going into a facility where ringworm-positive cats are housed will not create an infection in a person, and neither will that person mechanically transfer infectious agents outside the house on his or her person" "Regulations that limit public contact with potentially infection cats are sensible for facilities where the public might be unwittingly exposed to harmful agents. However, in the context of a home environment, which is not a licensed business and is not regulated as such, applying those same regulations seems unusual and extreme."*

16. Initially the Massachusetts Department of Agriculture offered (7/2/04) to allow Ms. Erickson to transfer her Persians and/or quarantine as long as the facility and/or home she transferred them to would be regulated under those statutes for Pet Shops (a public facility). Erickson argued that requirement unreasonable and unnecessary as her home, though meets the structural conditions of which is described in letter dated Jul 2nd, 2004, is not open to the public. The MDA offers no reasonable argument to make these requirements and in the same instance refuses to inspect Ms. Erickson home to qualify it as meeting those conditions as to the structural efficiency demonstrating its disingenuous concern.

17. Dr. Lund states that regulating Ms. Erickson's home as if a licensed business *"unusual and extreme"*. The MDA's recommendation to regulate Ms. Erickson's home like a pet shop is a unnecessary, unreasonable and unsupported attempt to have government intrusion in the privacy on ones home. Dr Lund addresses the ridiculousness of this type of regulation by its applicability to public facilities *"Regulations that limit public contact with potentially infectious cats are sensible for facilities where the public might be unwittingly exposed to harmful agents"* and reinforces her recommendations for the immediate transfer to Ms. Erickson's home by her important inclusion: *"the benefits of housing [the cats] in a home are considerable."..."I find no compelling reason to prevent the immediate return of Ms. Erickson's Persians"*. (Exh. 3, para 12 & 17)

3

18. Requiring Ms. Erickson to house her Persians under the statutes for a business and/or public facility 'Pet Shop' unreasonable and is intended to prevent Ms. Erickson from bringing her Persians home. Ms. Erickson argues that her home which is not open to the public, separately filtered and exhausted fresh air systems, separate rooms with cages if necessary and an on call veterinarian.

19. On 3/16/04 and while being cared for by the Animal Rescue League Dr. Lund, during her visit on that day took numerous photos (Exh. 4) of Plaintiff's Response to Defendant's Opposition at 4a shows a cat standing up on two legs crying through the cage bars standing on and next to wet urine covered flooring. In comparison there never has been a photo demonstrating any of Ms. Erickson's cats standing in or sitting in excrement in her home.

20. Plaintiff states that currently her cats are not being properly cared for, and is made obvious by several facts and objective photos demonstrating these Persians living in isolation (many can't even see each other while in cages) with infrequent human contact hiding as they are afraid (see photo showing a comparative photo of the same cat on the day it was seized from Ms. Erickson's care they were all out intermingling with the 20 or so strangers who entered their home, now they are living in putrid ambient air as their eyes demonstrate red swollen and irritated tissues.

21. To prevent the immediate return of Ms. Erickson's beloved Persians would be to add insult to injury. Ms. Erickson's beloved family of Persians showed no signs of animal abuse, taken from her while violating her 4th amendment rights by a group of animal rights activists (Animal Rescue League) whose contradictory assessment and personal motivations to remove Ms. Erickson's Persians has totally defamed her good name and reputation while it deliberately euthanized several of her companions throughout this last year whom they had unlawfully custody and vengefully torn these her beloved Persians from her heart, a wrong that this Honorable Court should recognize.

22. Dr. Lund attests "*I have found no indication of animal abuse by Ms. Erickson regarding her cats to be documented by a review of the preliminary medical records supplied to me by the Animal Rescue League*". (Exh 3, para 16)

**CONCLUSION**

23. G.L. c 129 s 2 Authorizes the Director of Animal Health to make and **enforce reasonable orders**, rules and regulations relative to the **prevention**, suppression and expiration **of contagious disease** of domestic animals.' The Director has done nothing to enforce sound veterinary practices from the current caregivers (Animal Rescue League) by enforcement of adequate treatment regime.

24. Ms. Erickson has been prevented to ensure that her beloved Persians held against her will by the Animal Rescue League, be provided proper care. Medical records provided to both Plaintiff and Dr. Lund indicate that for over a year these purebred Persians have been housed in a shelter, isolated in a quarantine room (quarantined allegedly for the causative agent *microsporum canis*) and have not received adequate, effective veterinary care, noting no treatment with oral anti-fungal itraconazole which is currently recommended by Dr. Lund (see Affidavit Lund Ex. 3 at para 15.)

4

## THE STANDARD FOR A PRELIMINARY INJUNCTION

12. The Federal Court may preserve the status quo pending appeal or grant other forms of interim relief, but this ordinarily requires a showing of likelihood of success as well as a balance of equities and public interest considerations tipping in favor of such relief. *Coalition for Basic Human Needs v. King*, 654 F. 2d 838, 842-43 (1st Cir. 1981) (*per curiam*). Furthermore, the greater the irreparable harm shown by the Plaintiff, the lower her burden is with respect to success on the merits. The more foreseeable the Plaintiff's ultimate success on the merits, the less weight the Court accords the Appellee/Defendant's prospective loss. *SEC v. World Radio Mission*, 544 F.2d. 535, 541 (1st Cir. 1976). The Plaintiff here has met these standards.

13. The standards for an injunction pending appeal are the same as a preliminary injunction, namely "consideration of movant's likelihood of success on the merits, potential for irreparable harm, balancing of relevant equities, and effect on public interest." *Campbell Soup Co. v. Giles*, 47 F. 3d 467 (1st Cir. 1995); see, e.g., *Kaalski v. Chicago Tribune Co.*, 854 F. 2d 168, 170 (7th Cir. 1988)(stating that a request for a preliminary injunction is evaluated in accordance with a "sliding scale" approach: the more the balance of irrevocable harms inclines in the Plaintiff's favor, the smaller the likelihood of prevailing on the merits need shown in order to get the injunction).

14. This Court is only required to determine whether the Defendant MDA violated Plaintiff's rights, not the wisdom of the decision or actions to violate her protection guaranteed.

15. This Court should grant a preliminary injunction in favor of the Plaintiff where: (a) the Plaintiff will suffer injury if the injunction is not granted; (b) such injury outweighs any harm which granting injunctive relief would inflict on the Defendants; (c) the Appellant Plaintiff has exhibited a likelihood of success on the merits, and; (d) the public interest will not be adversely affected by the granting of the injunction. *Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d.1066, 1009 (1st. Cir. 1981); *Narragansett Indian Tribe v. Guilbert*, 934 F.2d. 4, 5 (1st Cir. 1991). In balancing the elements of this test, the Plaintiff is entitled to the relief she seeks if:

> The harm caused Plaintiff without the injunction, <u>in light of</u> the Plaintiff's likelihood of eventual success on the merits, outweighs the harm the injunction will cause Defendants.

*United Steelworkers of America v. Textron, Inc.*, 836 F.2d. 6, 7 (1st Cir. 1987), citing *Vargas-Figueroa v. Saldana*, 826 F.2d. 160, 162 (1st Cir. 1987) (emphasis original). The more foreseeable the Plaintiff's ultimate success on the merits, the less weight the Court accords the Defendant's prospective loss. *SEC v. World Radio Mission*, 544 F.2d. 535, 541 (1st Cir. 1976). The Plaintiff here has met these standards.

25. G.L. c 129 s 11 Authorizes the Director of Animal Health, when "of the opinion that the **public good so requires**, shall cause diseased animals to … be killed without appraisal or payment;" Dr. Fraser writes in his Affidavit: "*To Order euthanasia of Ms. Erickson's animals and giving a date as to which this should be performed an assault of great public concern. The implication of this type of terminal elimination of a companion animal for a*

*non-lethal, treatable disease is of significant public interest not only because of Commonwealth's anti animal cruelty laws but of common decency and the fact that companion animals have known beneficial health contributions to the well-being of the care-giver, together with the probability that nearly ½ of the population owns a pet/companion animal or has contact with one or more, makes the potential significance of this Order daunting"*

26. Dr. Fraser at para 7 *"I have read the statutes, cited by MDA, GL c 129 s2 & s11 and as it relates to this situation I find the MDA reasons for euthanasia inherently unsupported by medical fact".*

27. The Defendants' intention to euthanized her beloved cats not in the public's best interest and will significantly harm Plaintiff both emotionally and physically. To continually hold against the rights of Plaintiff, by the use of the MDA's non-legitimate, unrealistic, and unreasonable quarantine wrong. Together the pretextual excuse meant to deprive Ms. Erickson of her property, with the intent to permanently harm her Persians physically and mentally inherently wrong. Plaintiff has suffered tremendously both physical and emotionally from the injuries caused by her states of fear, sadness, loss, humiliation, embarrassment, constantly in fear and anxious for the safety of her beloved Persians secondarily to that of her reputation by the Defendants' maintaining and effectuating a fraudulent claim of animal abuse under the state statutes relating to animal cruelty.

28. Both Dr. Fraser and Dr. Lund attests that *microsporum canis* (ringworm) is neither fatal, nor a public health risk and both support the immediate return of Ms. Erickson's cats together with their independent reasons that both refute the MDA's reasons to euthanized her beloved cats and conclude ***the MDA's reasoning unsupported by medical fact.***

29. By the needless unreasonable destruction of her beloved Persians Plaintiff undeniably will suffer a greater loss as will the "public good" by setting this precedent.

WHEREFORE, This Honorable Court should Order the immediate STAY of 'Orders to Euthanize' Erickson's Persians currently held at the Animal Rescue League 599 Washington Street Pembroke, MA.


PRAYER FOR EMERGENCY RELIEF

1. Plaintiff prayers for an Emergency STAY of the Orders To EUTHANIZE on any of Ms. Erickson's beloved Persians currently in its custody under a quarantine and or under the custody and control of the Animal Rescue League at 599 Washington Street, Pembroke, MA and or MDA until a hearing could be conducted on Motion for Preliminary Injunction.

2. Order the ARL and Smith from failing to provide adequate veterinarian care to Ms Erickson's Persians pursuant to recommendations of Dr. Lund, DVM, Feline Practitioner found in her affidavit (Ex.3) at para. 15.

6

3. Order the ARL and Smith preservation and necessary medical/veterinary care upon all of Ms. Erickson beloved Persians currently held at Animal Rescue League, 599 Washington Street, Pembroke, MA according to Catherine Lund, DVM as noted in her Affidavit (Ex 3) para 15.

4. Order the immediate return of Ms. Erickson's Persians.

5. Vacate Dismissal issued on 8/16/04.

By signature hereunder I attest that the facts herein true under the pains and penalties of perjury and that today I have called the Massachusetts Department of Agricultural Resources requesting they not destroy my beloved Persians. I informed them by facsimile that I was seeking this TRO.

Respectfully submitted by

Heidi K. Erickson, *pro se*

August 23rd, 2004    *By signature herein I attest to the facts herein as true under the pains and penalties of perjury.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CASE NO. 04-11329-DPW

DR. JOHN J. BELIVEAU,
PLAINTIFF

v.

TOWN OF MANSFIELD MUNICIPAL
ELECTRIC DEPARTMENT and
JOHN O. D'AGOSTINO,
DEFENDANTS

## CERTIFICATE OF SERVICE

I, Susan Jacobs, attorney for the Defendants in the within action, hereby certify that a true and correct copy of the foregoing Certificate Pursuant to 16.1(D) was this day forwarded to the Plaintiff by first class mail, postage prepaid, to the following:

Juliane Balliro, Esquire
Perkins, Smith & Cohen, LLP
One Beacon Street, 30th Floor
Boston, MA 02108

Signed under the pains and penalties of perjury, this 23th day of August 2004.

VOLTERRA, GOLDBERG, MANGIARATTI
& JACOBS, LAW COUNSELLORS INC.

_____
Susan Jacobs, BBO#554875
Three Mill Street
Attleboro, MA 02703
(508) 222-1463

U:\Rikki\Mansfield\Beliveau v. Mansfield\CertSvc_Certificate(SJ).doc